GLENN, APPELLANT, v. S. BIRCH & SONS CONSTRUCTION
CO., RESPONDENT.

(No. 3,669.)

(Submitted May 16, 1916. Decided June 7, 1916.)

[158 Pac. 834.]

*Contracts—Sales—Offer and Acceptance—Counter Proposals—
Effect.*

Contracts—Offer and Acceptance.
  1.  In order to form a contract, there must be an offer by one party
  and an unconditional acceptance of it by the other in accordance with
  its terms, and, if the acceptance falls within or goes beyond the terms
  of the offer, there is no contract.
Same—Sales—Offer—Unconditional Acceptance Necessary.
  2.  Acceptance of an offer of sale of city bonds,—the negotiations
  being conducted through the medium of correspondence by telegrams
  and letters,—to which was attached a reservation, giving the buyer the
  right to examine the legality of the proceedings of the city council lead-
  ing up to the issuance of the bonds before concluding the purchase, was
  not unconditional and absolute so as to bind the seller.

---

For authorities on the question of time and place of consummation of
contract when offer is by letter and acceptance by telegram, or *vice versa,*
see notes in 6 L. R. A. (n. s.) 1016 and L. R. A. 1916A, 1302.

Same—Sales—Buyer Substituting Third Person—Effect.
  3.  Where an offer for the sale of city bonds has been made by the seller to A, the latter could not, by coupling with his acceptance a proposal that B should be substituted in his place as buyer, compel the seller to enter into contract relations with B, a stranger about whom he knew nothing, and the seller could rightfully withdraw his offer without incurring liability to A notwithstanding the latter then—but too late—proposed to assume the position of obligee and accept delivery of the bonds.

  [As to contracts by telegraph and the admissibility of telegrams as evidence, see notes in 93 Am. Dec. 514; 110 Am. St. Rep. 742.]

Same—Confirmation of Sale—"Subject to Written Contract."
  4.  Where a buyer of municipal bonds indicated in a telegram that he desired to enter into a written contract of sale, the seller's reply that he confirmed the sale "subject to written contract," construed as a reservation of the right to reject the formal writing if examination of it disclosed unacceptable terms.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Fred Glenn against the S. Birch & Sons Construction Company.  Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. Cooper & Stephenson,* for Appellant, submitted a brief.

*Mr. J. W. Speer,* for Respondent, submitted a brief; *Mr. J. A. Kaufman,* of Counsel, argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for breach of contract.  The district court having sustained a general demurrer to the complaint and rendered judgment for defendant, the plaintiff appealed.  The question presented is whether certain correspondence between the parties by telegrams and letters resulted in the formation of a contract.

Some time during the year 1913, and prior to the month of October, the defendant corporation had contracted with the city of Great Falls to construct pavements in two improvement districts designated as districts 157 and 158, the city agreeing to pay for construction done in the first the sum of $143,166.28,

and in the latter the sum of $54,462.  Payment was to be made in bonds due in eight annual installments, with interest at 6 per cent per annum.  They were to be delivered to defendant from time to time in installments, as the work progressed.  The plaintiff, doing business in Portland, Oregon, as Fred Glenn & Co., desiring to purchase the bonds from defendant, had the following correspondence with it:

Telegram from plaintiff to defendant:

"Portland, Oregon, September 26, 1913.

"Messrs. Birch & Sons, Contractors, Great Falls, Montana.

"Please wire immediately stating whether you have any desirable issues of coupon warrants which you desire to sell at ninety-four.  State amount and names of streets covered by the improvements.

"FRED GLENN & COMPANY."

Telegram from defendant to plaintiff:

"Great Falls, Mont., Sep. 27, 1913.

"Fred Glenn and Company, Portland, Oregon.

"We have two hundred thousand six per cent coupon bonds eight years for ninety-seven.

"S. BIRCH AND SONS CONSTN. CO."

Reply to foregoing:

"Portland, Oregon, Sept. 28th, 1913.

"S. Birch & Sons Construction Co., Great Falls, Montana.

"Please mail immediately map showing districts covered by bonds mentioned your wire.  If more than one district please state number each district amount warrants each district whether total issues are available denominations of bonds assessed valuation of each district also estimated sale value per front foot cost of improvements per foot.  Can possibly use total issue providing showing is satisfactory.

"FRED GLENN & COMPANY."

On September 29, defendant wrote to plaintiff giving in detail the information called for in the telegram of September 28.  In that letter the defendant wrote as follows:

"We herewith confirm our telegraphic quotation of 97 cents for these warrants, and are holding the same subject to disposal to other parties at our convenience."

Telegram from plaintiff to defendant:

"Portland, Oregon, October 1, 1913.

"Messrs. Birch & Sons, Contractors, Great Falls, Montana.

"Glenn will arrive Great Falls Thursday evening train purpose inspection district.

"FRED GLENN & COMPANY."

Telegram from defendant to plaintiff:

"Great Falls, Montana, October 8, 1913.

"We will hold Great Falls warrants for your acceptance until October eleventh. After that date will hold them subject to disposal to other parties.

"S. BIRCH & SONS CONSTN. CO."

Telegram from defendant to plaintiff:

"Great Falls, Montana, October 8, 1913.

"Fred Glenn, Bond A, Dept. German American Trust Co., Denver, Colo.

"We confirm our figures of ninety-seven on bonds mentioned advise at once by wire what proceedings etc. you require.

"S. BIRCH & SONS."

Telegram from plaintiff to defendant:

"Denver, Colorado, October 8, 1913.

"Birch & Sons, Contractors, Rainbow Hotel, Great Falls, Montana.

"Our people have confirmed purchase both districts Great Falls, Montana, paving warrants, subject legality, etc. We are sending written contract which you will please sign. Concerning proceedings please obtain minutes every council action from start to finish. We are writing you fully. Please wire undersigned immediately confirming sale. Use Denver address.

"FRED GLENN."

Reply to this telegram:

"Great Falls, Mont. Oct. 8, 1913.

"Fred Glenn, Bond Dept. German American Trust Co., Denver, Colo.

"We confirm sale of warrants subject to written contract.

"S. BIRCH & SONS CONSTN. CO."

The plaintiff wrote to defendant at length from Denver, Colorado, on October 9, 1913. In this letter, after recapitulating in substance the correspondence had between the parties up to that time, the plaintiff wrote as follows:

"In connection with this matter, we desire to state that these bonds have been sold to the German American Trust Company of this city. * * * You will note, from consulting the inclosed statement, that this bank is perfectly reliable, and will take care of these warrants as they are delivered, in accordance with the writer's interview with your Mr. Fred Birch. * * * The trust company will doubtless send two of their directors to look at the district, and these directors will probably desire you to conduct them over the same. In doing so the question of price paid for these warrants might possibly arise, and we will greatly appreciate having you keep the figures, at which we purchased them from you, a matter of confidence between ourselves. If there are any other members of the firm who know about this price, and who may come in contact with these directors, kindly advise them on this matter, as we do not desire to have them know exactly what our commission will be. The inclosed written contract you will please execute in triplicate, keeping one copy for yourselves and sending the other two copies to us, addressed Yeon Building, Portland, Oregon. Kindly give this latter matter your prompt attention, so that the contract will be in Portland by the time the writer arrives there the first part of next week."

Telegram from defendant to plaintiff:

"Great Falls, Mont., Oct. 15, 1913.
"Fred Glenn Co., Yeon Bldg., Portland Ore.

"Contract for bonds not satisfactory.   Do not care to contract to deliver bonds to third party and herewith withdraw our offer.

"S. BIRCH AND SONS,
"S. BIRCH,
"President."

Reply to this telegram:

"Portland, Oregon, October 16, 1913.
"S. Birch and Sons, Contractors, Great Falls, Montana.

"We have already received your definite telegraphic acceptance of our offer to purchase all your Great Falls Montana paving bonds.   It is now too late to withdraw your acceptance. Delivery can be made direct to us.   Contract can be satisfactorily adjusted.   We insist on delivery as per your telegraphic acceptance to our Mister Glenn in Denver Wire answer.

"FRED GLENN & COMPANY."

Defendant's reply to above:

"Great Falls, Montana, October 16, 1913.
"Fred Glenn and Co., Portland, Ore.

"We absolutely refuse to consider your contract on Great Falls paving bonds.   It is too late to adjust it to suit us.

"S. BIRCH AND SONS CONSTN. CO.,
"S. BIRCH, Pres."

The complaint does not disclose the terms of the contract which the plaintiff desired the defendant to enter into with the German American Trust Company.

The propriety of the court's action in sustaining the demurrer turns upon the inquiry what import must be given to the second telegram sent by plaintiff from Denver, Colorado, on October 8. The telegram of the same date from defendant cannot be regarded as anything other than a formal offer of sale with an implied request, in case of acceptance of the offer, for information as to what, if any, of the proceedings touching the organization of the improvement district, and those touching the issu-

ance of the bonds, the plaintiff would require. This is made manifest by the fact that up to that time the plaintiff had not accepted defendant's offer. Regarding this telegram as an unconditional offer at the price named, the question then is whether the telegram of that date from the plaintiff constituted an unconditional acceptance.

In order to form a contract there must be an offer by one party and an unconditional acceptance of it by the other, in accordance with its terms. The offer must be in a form in which [1] it may be accepted, and the acceptance must be absolute and unconditional, according to its terms, of everything which the offer requires to be accomplished. In other words, there must be an entire agreement in the minds of the parties, not only as to the subject matter, but also as to the extent and character of the obligation with reference to it assumed by each. If the acceptance falls within or goes beyond the terms of the offer, there is no agreement of minds, and the transaction amounts to nothing more than one of proposals and counter proposals. (*Brophy* v. *Idaho P. & P. Co.*, 31 Mont. 279, 78 Pac. 493; *Monahan* v. *Allen,* 47 Mont. 75, 130 Pac. 768; *Eggleston* v. *Wagner,* 46 Mich. 610, 10 N. W. 37; *Potts* v. *Whitehead,* 23 N. J. Eq. 512; *Minneapolis etc. Ry. Co.* v. *Columbus Rolling Mill,* 119 U. S. 149, 30 L. Ed. 376, 7 Sup. Ct. Rep. 168.) Let us see if plaintiff's telegram meets this requirement. If it had in-[2, 3] cluded merely the words, "our people have confirmed the purchase both district Great Falls, Montana, paving warrants," there would have been no question that the acceptance would have been sufficient. Not being willing to become absolutely bound, however, plaintiff, besides attaching a condition reserving to himself the right to determine the legality of the bonds after an examination of the proceedings leading up to their issuance, furthermore, as appears from the telegram and the letter of October 9, proposed that defendant should enter into a written contract with a third party, the German American Trust Company, thus substituting the company in place of himself. The acceptance was, therefore, not unconditional and absolute, but conditional in the first instance, and carried with it

a counter proposal which had not theretofore been considered. Suppose, upon subjecting the proceedings to examination, the plaintiff had found them irregular in particulars which, in his opinion, rendered the validity of the bonds questionable; would plaintiff have nevertheless been bound to take the bonds and pay for them?

But, waiving this question, was defendant bound to enter into contract relations with a person other than the plaintiff? Its proposition was to sell to plaintiff, not to another person. The negotiations had been made with him. It had had an opportunity to satisfy itself that he was a suitable person to establish contract relations with. This was one thing. It was quite another for the plaintiff to couple with his acceptance a proposal that defendant should enter into contract relations with a third party, about which it ostensibly had no knowledge, under stipulations and conditions not disclosed to defendant until it had received plaintiff's letter of October 9, containing full information as to the obligations defendant was to assume toward the obligee, substituted by plaintiff in his stead. If it be conceded that the German American Trust Company had been mentioned by plaintiff to the agent of defendant during his visit to Great Falls early in October, as is intimated in the letter of October 9, there is nothing in the complaint disclosing what was said or [4] what, if any, understanding was reached at that time. The telegram from defendant on October 8, in reply to that of defendant, must be understood as a confirmation of the sale, subject to its approval of the written contract. Up to that point in the negotiations, a formal written contract had not been mentioned. In the light of plaintiff's telegram, indicating that he desired to enter into a formal written contract and asking further confirmation of the sale, the expression "subject to written contract," in defendant's reply, is not to be construed as a demand for a formal written contract, but as a reservation of the right to reject the formal writing if examination of it disclosed terms which could not be accepted. When it ascertained that it was to assume contract relations with the trust company

instead of plaintiff, it had the right to refuse to do so, as it did, and withdraw its offer because it had not been accepted absolutely and unconditionally according to its terms. And it does not aid plaintiff's case that he thereafter proposed to assume the position of obligee and accept delivery of the bonds. The offer was then no longer open to acceptance.

There is some argument in defendant's brief by which it seeks to maintain the proposition that, looking to the correspondence as a whole, including the fact that the bonds were to be delivered in installments, it was the intention of the parties that they should not be mutually bound until they had embodied the result of their negotiations in a written contract. Whether this is so we deem it unnecessary to decide, in view of the conclusion stated above that there was no contract.

The judgment is affirmed.                              *Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.