STEINBRENNER, RESPONDENT, *v.* MINOT AUTO CO., APPELLANT.

(No. 3,991.)

(Submitted March 21, 1919.  Decided April 28, 1919.)

[180 Pac. 729.]

*Contracts—Principal and Agent—Offer and Acceptance—Omission of Signature of One Party—Waiver—Question of Law—Submission to Jury—Harmless Error.*

Contracts—Offer and Acceptance.
1. In order to form a contract, there must be an offer by one party and an unconditional acceptance of it by the other in accordance with its terms.

Same—Mode of Acceptance—Who may Prescribe.
2. The party making an offer may prescribe the mode by which acceptance must be made.

Same—Mode of Acceptance—Waiver.
3. Where an agency contract provided that it should not become effective until acceptance by defendant company evidenced by the signature of its general manager, the mode of acceptance, being for defendant's benefit, could be waived by it and acceptance made by any other mode.

Same—Acceptance—What may Constitute.
4. Anything that will amount to a manifestation of a formal determination to accept, communicated, or put in the proper way to be communicated, to the party making the offer, will complete a contract.

Same—Omission of Signature of One Party—Effect.
5. Where a contract is signed by one only of the parties to it, but is accepted or acted upon by the other party, it is as binding as if signed by both parties.

Same—Failure of Signature—Waiver.
6. Where a contract was not in fact signed by the general manager of defendant automobile company, as required by its terms, but had been acted upon by it as shown by correspondence between plaintiff and the manager, the contract was as binding as if it had been so signed,

the requirement of formal approval by the manager being deemed waived.

Same — Acceptance — Question of·Law — Submission to Jury — Harmless Error.

7.   Where the evidence touching the issue whether defendant accepted the contract sued upon by plaintiff was uncontroverted, the question was one of law for the court, and its submission to the jury was error, but nonprejudicial, because in defendant's favor.

*Appeal from District Court, Missoula County; Theo. Lentz, Judge.*

ACTION by George L. Steinbrenner against the Minot Auto Company.   From a judgment for plaintiff and from an order denying its motion for new trial, defendant appeals.   Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Palda, Aaker & Greene,* of the Bar of North Dakota, and *Messrs. Mulroney & Mulroney,* for Appellant.

*Mr. Thos. N. Marlowe* and *Mr. Henry C. Stiff,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for breach of contract.   In the district court plaintiff had verdict and judgment.   Defendant has appealed from the judgment and an order denying its motion for a new trial.

The complaint alleged that on May 26, 1915, at Missoula, Montana, the plaintiff and defendant entered into a contract under the terms of which the plaintiff purchased from defendant twenty-five Overland automobile cars, which defendant agreed to deliver to plaintiff when he should order and request them to be delivered; that plaintiff was at all times thereafter ready and willing to perform fully all the agreements and obligations of the contract on his part; that he requested the defendant to deliver to him thirteen of the cars so purchased, after incurring great expense in preparing to resell them, and after he had in-fact sold some of them; and that defendant failed and refused

to deliver any of the cars, notifying the plaintiff that it did not intend to perform the contract on its part nor any of the agreements therein contained, whereby the plaintiff was damaged, *etc.* The answer of the defendant was a general denial. Counsel argue that the evidence was insufficient to justify the verdict, in that it failed to show that plaintiff ever entered into the contract with defendant as alleged.

The defendant is engaged in business at Minot in the state of North Dakota as a distributor to dealers of Willys-Overland automobile cars for the Willys-Overland Company, the manufacturer, of Toledo, Ohio. Prior to May 26, 1915, the plaintiff had a contract with defendant, under the terms of which he was bound to purchase from the defendant at least twenty-five cars of the classes designated by the manufacturer as models 80 and 81, with the exclusive right to sell them, and also such others as he might purchase prior to June 30, 1915, to customers in Missoula and the adjoining counties of Ravalli, Sanders, and a portion of Powell. In this contract the defendant was designated as "dealer," and the plaintiff "sub-dealer." It is referred to in the record by the witnesses as the "1915 contract." Not less than twenty-five cars were to be delivered to plaintiff during the months from August, 1914, to June, 1915, inclusive. By its terms this contract was to expire on June 30, 1915. On May 26, 1915, plaintiff entered into another contract with the defendant, through one D. H. Smith, who signed the name of the defendant as its agent. This is referred to in the record as the "1916 contract," and is the one for the breach of which recovery is sought herein. It was in all respects the same as the 1915 contract, except that it stipulated that the plaintiff was bound to purchase not less than twenty-five cars of the classes designated as models 83 and 84, to be delivered to him during the months from August, 1915, to June, 1916, inclusive. The contract contained this provision: "That this contract shall expire by its own limitation on June 30, 1916, unless canceled or terminated as provided herein; that it shall take effect from the date of its acceptance by Minot Auto Company, which acceptance is evi-

denced by the signature of L. C. Stearns, and that it supersedes all contracts or agreements of prior date, and that any and all existing contracts or agreements are hereby terminated at the date of the (acceptance of this agreement.'' It also contained the provision ''that no alterations, modifications or abridgments of this agreement shall be had unless in writing duly signed by Minot Auto Company.'' Contracts between the defendant and its subdealers were upon printed forms furnished by defendant and were executed by both parties in triplicate, ostensibly at defendant's place of business in North Dakota. At the end and below the signatures of the parties was provided a place where Stearns, who was defendant's general manager, would attach his signature indicating his approval. In this instance the contract was executed at Missoula, and the triplicate copies were delivered to Smith and transmitted to the defendant for approval by Stearns. The contract was never formally approved by Stearns; nor was one of the copies ever returned to the plaintiff. As soon as the contract was signed, plaintiff gave Smith an order upon the defendant for four 83 model touring cars to be shipped at once. On June 10 plaintiff mailed another order to Smith at Great Falls, Montana, for an extra roadster car to be included in the shipment ordered on May 26. On June 21, Smith being at Missoula, plaintiff ordered from the defendant through him four more 83 model touring cars. Each of these orders directed the defendant to draw upon the plaintiff for the purchase price at the time of the shipment. This was done in order to meet the requirement of the contract that all cars were to be paid for in cash. On June 22 the plaintiff, having heard nothing from the orders of May 26 and June 10, telegraphed defendant as follows:

''Received wire from factory to-day as follows: 'Your carload not en route delivery up to Minot.' Please advise whether you are in any way slighting me. Have as yet not been able to get any of the new goods. Add one roadster to this shipment making five cars. Must have cars.

''GEO. L. STEINBRENNER.''

On the following day defendant replied:

"Minot, N. D., June 23, 1915.

"Mr. Geo. L. Steinbrenner,

"Missoula, Montana—

"Dear Sir: In reply to your telegram of the 23d in regard to getting your cars started to you, can assure you that it is not our intention to slight you in any way in the matter of shipments to you. The fact of the matter is that we have been unable to get any cars for practically the past three weeks. As for them advising you that it is our fault in any way that shipment has not been made, presume they did this on account of it being the easiest way out of it—for them to put it up to us to make whatever explanations are necessary. We have, at the present time, orders on file with the factory for over 300 cars and are doing everything possible to get shipments started to all of our dealers. We are writing the factory again to-day asking them to add one roadster to your shipment and to try to get carload started to you without delay. As soon as we have any definite information to give you, we will advise you further.

"Yours very truly,

"MINOT AUTO CO.,

"L. C. STEARNS,

"General Manager."

On June 24 the defendant wrote as follows:

"Minot, N. Dak., June 24, 1915.

"Geo. L. Steinbrenner,

"Missoula, Mont.—

"Dear Sir: Since date of receiving your telegram ordering model 83 roadster to be included in May 26th shipment, we have received orders from our Mr. Smith for two additional carloads to be shipped to you. One of these orders calls for two models, 83 touring, two models 83 roadsters. Is it your wish to have this carload come forward in addition to the roadster which you ordered by telegram? In order that there may be no mistake in this, we are holding up this last-mentioned order until we hear from you. This will not cause any delay as there would be

no chance of the factory shipping you two carloads at once anyway. Kindly let us hear from you in regard to this at once and oblige,                    Yours very truly,                    \:

"Minot Auto Company,

"L. C. Stearns,

"General Manager."

In the meantime, on June 22, defendant had addressed a letter to all of its subdealers, a copy of which, plaintiff received, explaining its delay in filling orders. After stating that the Willys-Overland Company was increasing its manufacturing capacity because it had found that the popularity of the 83 model was so great that it had become impossible to fill orders promptly, it encouraged them to be patient and in the meantime to endeavor to hold prospective customers until they could be accommodated. It then continued: "Of this much you may rest assured—we are going to deliver cars in fair proportion to every dealer and every dealer will be taken care of in the proper ratio. We realize the proposition you are up against, but do not definitely promise your customers any particular delivery. Tell them you will deliver cars within a reasonable time and in this way you can usually hold them off. Impress this fact upon your mind: You are in a better position in regard to delivery than any other dealer handling other medium-priced, standard makes of cars, and we believe the fact of your having a much better proposition to offer than any of the other 'fellows,' will enable you to get the larger percentage of your customers to wait until you can secure a 1916 Overland for them.

"Yours very truly,

"Minot Auto Company,

"L. C. Stearns,

"General Manager."

On June 26 the plaintiff wrote to the defendant acknowledging receipt of the letters of June 23 and 24 and thanking it for the information that it was not responsible for the delay in shipping the first order of the 83 model cars. The letter then continued:

"I have been inclined to hold this delay against you, after re-

ceiving the wire to that effect from Toledo, but trust that you will use your influence in my behalf and get these first cars (four touring and one roadster) to me quickly. I am satisfied were I to get this shipment quickly that I will outsell every agency in this vicinity this season. Now regarding your letter of the 24th: In event you get me the one roadster shipped with the May 26th order, you will please change the other order given Mr. Smith (June 10) to read three touring and one roadster. I wish we could get them along here about ten days to two weeks later than first shipment. The other shipment to follow up as ordered later. (Order of 6–21.) Also will you please forward to me quickly, about twenty catalogues and a few newspaper cuts, as I haven't as yet received any, and have been using 1915 cuts of the model 80 for newspaper advertising. I have been carrying on quite a little of advertising work and feel that I have things coming our way, but must get some cars. I have written to the factory requesting catalogues, *etc.*, but am informed that they are temporarily out; so wish you could supply me with a few until such time as they ship me some. Trusting you will soon advise me that the car famine is raised, and that I have some in transit, I am,

> "Yours very truly,
> "GEO. L. STEINBRENNER."

On July 5 defendant wrote:

> "Minot, N. Dak., July 5th, 1915.

"Mr. Geo. L. Steinbrenner,

   "Missoula, Montana—

"Dear Sir: This will advise you of nonacceptance of contract for 1916 signed by you. Mr. Tuxberry, special representative from the factory together with F. H. Barry, who is Western Montana representative from factory, made trip to Missoula last week and after investigating situation thoroughly decided that it would be to the best interests of the Overland organization to place contract with Mr. F. M. Shoemaker of your city. It is our understanding that you have a stock of parts that will inventory approximately $1,000 and presume you will want to

dispose of these parts.   Mr. Barry, in his letter, advises that he had reached agreement with Mr. Shoemaker to take over this entire stock.   Will it be necessary to send any one to help you in transferring this stock or can you and Mr. Shoemaker take care of the same yourselves?   Relative to the orders for parts and cars now on file.   Will have all of these orders canceled.   We are enclosing statement showing balance due us after crediting your account with the amount of your 1915 deposit and are also enclosing signatures to your contract.   Kindly advise if it is your wish to send us your check for balance of your account or if you prefer we can have Mr. Shoemaker retain amount of balance at the time he makes settlement with you on stock of parts.                    Yours very truly,

"MINOT AUTO COMPANY,

"L. S. STEARNS."

With this letter were inclosed the parts of two of the triplicate copies of the contract bearing the signature of plaintiff.   Upon demand of plaintiff's counsel, the other parts were produced at the trial.   The third copy was not produced, counsel for defendant stating that they did not have it in their possession.   Stearns testified that the copy had either been misplaced or had been forwarded to the Willys-Overland Company.   Immediately after the date of the last letter, Shoemaker entered into a contract with the defendant and became its subdealer at Missoula.   Prior to this time, while waiting for the defendant to fill his orders, plaintiff had contracted for the sale of the cars ordered, upon the expectation that they would presently be shipped by the defendant.

The contention is that the contract, though executed by both plaintiff and defendant, never became operative for the reason that it amounted to no more than an offer by the plaintiff to enter into a contract until it had been formally accepted by defendant, as therein provided; that is to say, until the acceptance had been [1]   evidenced "by the signature of L. C. Stearns."   It is true, as counsel say, that in order to form a contract, there must be an offer by one party and an unconditional acceptance of it by

the other in accordance with its terms. (*Glenn* v. *S. Birch & Sons C. C. Co.*, 52 Mont. 414, 158 Pac. 834.) It is also settled [2] law that the party making the offer may prescribe the mode by which acceptance must be made, if at all. (1 Beach on the [3] Modern Law of Contracts, sec. 48; 9 Cyc. 265.) The plaintiff, however, did not prescribe any mode by which the defendant should accept. The mode was provided by the defendant itself and for its own benefit. It was at liberty, therefore, to waive acceptance by the mode prescribed and accept by any [4] other mode. "Anything that will amount to a manifestation of a formal determination to accept communicated or put in the proper way to be communicated to the party making the offer will complete the contract. The principle governing the matter of acceptance is that there must be a concurrence of the minds of the parties upon a distinct proposition, manifested by an overt act." (1 Beach on the Modern Law of Contracts, sec. [5] 49.) Where a contract is signed by one of the parties only, but is accepted or acted upon by the other party, it is just as binding as if signed by both parties. (9 Cyc. 300.)

One, reading the portions of the correspondence between the [6] parties quoted above, cannot entertain any doubt that from and after the time defendant received the triplicate copies of the contract for its acceptance, accompanied by the order of May 26 it regarded plaintiff as its authorized subdealer at Missoula, bound to it by all the obligations which he had proposed to assume. By these letters, it communicated its acceptance as fully and conclusively as if Stearns had formally approved the contract and returned one of the triplicate copies of it to the plaintiff. It could not insist thereafter that there was no contract and avoid its obligations thus assumed. The plaintiff had the right to conclude, as he did, that the 1915 contract had been suspended and that he had secured the exclusive privilege for the following year of selling cars manufactured by the Willys-Overland Company of the models therein mentioned, in the designated territory and to supply the necessary parts. He could have no other understanding than that he was at liberty

to contract for the sale of the cars which defendant had promised expressly to forward as soon as the manufacturer could furnish them. It was then beyond defendant's power to proceed upon the assumption that there was no contract because Stearns had omitted the formality of signing his name as the contract provided.

No question is made as to the authority of Smith to negotiate the contract in the first instance, subject only to approval by Stearns. Nor does counsel suggest that Stearns did not have authority to waive, for the defendant, the requirement of formal approval. The argument is wholly without merit.

The court submitted to the jury the question whether the defendant had accepted the contract. There was no controversy [7] that Stearns wrote the letters quoted, nor that he had authority to do so. The question whether the contract had been accepted was therefore one arising upon uncontroverted evidence, which furnished the basis for but a single inference, *viz.;* that the defendant had accepted the contract and become fully bound by it. The court should have so held, and required the jury to find the amount of damages only. The error in this regard, however, was in favor of the defendant, resulting in no prejudice to it.

The other assignments of error are argued by counsel, but the rulings complained of in both instances were correct.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE COOPER concur.