J. NEILS LUMBER CO., RESPONDENT, v. FARMERS LUMBER CO., APPELLANT.

(No. 6,665.)

(Submitted October 7, 1930. Decided November 14, 1930.)

[293 Pac. 288.]

*Mr. John M. Kline* and *Mr. R. S. McKellar,* for Appellant, submitted a brief; *Mr. Kline* argued the cause orally.

*Messrs. Hurd & Hallett,* for Respondent, submitted a brief; *Mr. Otis A. Hallett* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff is engaged in the lumber business at Libby, and defendant at Nashua. Between June and October, 1926, plaintiff sold and delivered to defendant certain lumber and building materials. This action was brought to recover an alleged balance due to plaintiff for the purchase price of the materials in the sum of $896.67, with interest and costs. The case was submitted to the court on an agreed statement of facts, together with oral testimony. The court found for plaintiff, and defendant has appealed from the judgment.

From the agreed facts it appears that the only point of difference between the parties is the proper price to be paid by defendant for certain piling. Plaintiff contends that the

contract price was 24 cents per lineal foot for 8 and 20 foot, and 25 cents for 25 and 30 foot piling, while defendant contends that the contract price was 15 and 16 cents, respectively, per lineal foot. If the contract price was 24 and 25 cents, the judgment of the district court was proper. If the contract price was 15 and 16 cents, plaintiff has been paid in full. Evidence of the contract, if any, between the parties, consists of letters passed between them.

On May 11, 1926, defendant wrote to plaintiff requesting quotation on: "18 piles 20' 8" top, not less than 12" butt; 162 piles 20' 8" top, not less than 12" butt; 197 piles 25' 8" top, not less than 12" butt; 25 piles 30' 8" top, not less than 12" butt."

On May 13 plaintiff replied by saying: "On the piling price per lineal foot of 8" top 8' 15 cents, 8" top 20' long 15 cents, 8" 25' 16 cents, 8" 30' 16 cents, 10" top 8' 24 cents, 10" top 20' 24 cents, 10" top 25' 25 cents, 10" 30' 25 cents. On your specifications you specify 8" top a 12" butt. It is impossible to get an 8" top with this size butt and we are, therefore, quoting you price on 10" top which will cover the 12" butt."

On June 10 defendant wrote to plaintiff as follows:

"We have got the contract for the furnishing of all lumber and piling for the Frazer-Wolf Point Highway, and we sold on your quotations for piling and timbers and we are enclosing orders for some of the cars to be shipped at once. Your quotations for all 8" top piling are 15 and 16c and timbers $32.50 the piling to run from 8' to 30' as per our list of May 11th, the butt to be 12" minimum, and top as near 8" as possible to get.

"P. S. The contractor is J. F. Harrington of Missoula, Mont., he to take care of all freight and pay sixty days. We have promised this party prompt shipment of all material and we are confident that you can get this out at once, there will be about 150,000 feet of lumber used in this contract, as quickly as possible we will send the list of the remainder of

the material so that you can get it out. If there is anything that you do not understand you had better wire us."

With the letter of June 10th defendant enclosed an order for "102 piles 25' long 8" top 12" minimum Butt; 30 piles 20' long 8" top 12" minimum Butt; 6 piles 8' long 8" top 12" minimum Butt. Piles must be peeled and 12" minimum butt. The 8' piling are to have the same size butt not under 12" but no attention paid to top."

On June 23 plaintiff shipped the piling to defendant and mailed an invoice to it showing the price to be 24 and 25 cents.

On June 15 defendant ordered additional piling, specifying 12" minimum butt, 8" top. This was shipped by plaintiff and invoice mailed to defendant on June 25, showing the price of 24 and 25 cents.

On July 10 another order was made by defendant calling for "8" top, at least 12" butt," and the same was shipped and invoice sent on August 20, indicating the price as 24 and 25 cents.

On July 27 an order was placed for further piling with "12" butt 8" top." The last order was in the month of August and did not specify either the top or bottom dimensions of the piling.

Each shipment was followed by an invoice mailed to defendant, specifying. in each instance a price of 24 and 25 cents and describing the piling in all cases, save the last, as "8" top 12" min. Butt." The last invoice was mailed August 25, and, like the order, it did not specify top or bottom dimensions.

It was agreed that each communication, letter, invoice or order was received by the party to whom it was addressed, at least three days after the date appearing upon it. It was also stipulated that plaintiff actually shipped and billed to defendant all piling of 10" top and 12" butt.

On December 1 defendant wrote to plaintiff requesting a credit of 9 cents a foot on piling which it asserted in its letter was "the difference in price as charged in your invoices and

the price agreed on as per your letter of the 5/13th." Plaintiff on December 11, by letter, declined to give the credit.

The only oral evidence introduced was the testimony of J. R. Murphy, secretary-treasurer of defendant company, to the effect that defendant had sold the lumber and piling to J. F. Harrington before it was shipped to defendant and that the witness was absent from Nashua from June 22, 1926, until between the 5th and 10th of August; that he did not unload any of the piling and did not know they were not 8″ piling.

The question before us is: Does the foregoing correspondence establish a contract between the parties, and, if so, what are its terms?

As a matter of law, the consent of parties to a contract must be mutual (sec. 7473, Rev. Codes 1921), and "consent is not mutual, unless the parties all agree upon the same thing in the same sense." (Sec. 7488, Id.) But this is subject to the exception stated in section 7488 that "in certain cases defined by the chapter on interpretation, they are to be deemed so to agree without regard to the fact." The Chapter on Interpretation is found in sections 7526 et seq. Section 7530, which is one of the sections contained in this chapter, provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter."

If the written agreement is susceptible of but one meaning, ▪ misconception of a party not authorized by the language used does not affect the contract. In 13 C. J., 376, it is said: "The rule, however, that both parties must assent to the same thing and in the same sense has no reference to the misconception of a party not authorized by the language used or by the terms of the agreement. If the agreement describes the subject matter and the description does not admit of two meanings, the fact that one of the parties mistakenly thought that it was something else does not affect the contract."

The rule is well settled that, in order to form a contract, there must be an offer by one party and an unconditional acceptance of it by the other in accordance with its terms (*Polich* v. *Severson*, 68 Mont. 225, 216 Pac. 785; *General Fire Extinguisher Co.* v. *Northwestern Auto Supply Co.*, 65 Mont. 371, 211 Pac. 308; *Koerner* v. *Northern Pacific Ry. Co.*, 56 Mont. 511, 186 Pac. 337; *Steinbrenner* v. *Minot Auto Co.*, 56 Mont. 27, 180 Pac. 729), and that, if the acceptance falls within or goes beyond the terms of the offer or makes a condition at variance with the proposal, there is no contract and the transaction amounts to one of proposals and counter proposals only (*Glenn* v. *Birch & Sons Constr. Co.*, 52 Mont. 414, 158 Pac. 834; *Brophy* v. *Idaho Produce & Provision Co.*, 31 Mont. 279, 78 Pac. 493).

While the rule is that "if the parties enter into a contract which is fairly susceptible of two meanings, and one of the parties places one of such meanings upon the contract while the other party places the other meaning thereon, neither party knowing the meaning which the other attaches to the contract, no contract exists" (Page on the Law of Contracts, 2d ed., sec. 264), yet it is also the rule that, "if the offer is so worded as to be susceptible of but one meaning, liability under the contract which is made by the offer and acceptance, cannot be evaded on the ground that a different meaning was, in fact, attached to the offer by one of the parties thereto, unless the adversary party knew that such meaning was attached to the contract, and permitted the party who attached such meaning to alter his position in reliance on the meaning thus understood" (Page on the Law of Contracts, 2d ed., sec. 264; see, also, *Lamson* v. *Horton-Holden Hotel Co.*, 193 Iowa, 355, 26 A. L. R. 465, 185 N. W. 472; *Harper* v. *Battle*, 180 N. C. 375, 20 A. L. R. 357, 104 S. E. 658; *Phillip* v. *Gallant*, 62 N. Y. 256).

In the last-cited case the court quoted with approval from the case of *Smith* v. *Hughes*, L. R. (6 Q. B.) 597, as follows: "If, whatever a man's real intention may be, he so conducts himself that a reasonable man would believe that he was as-

senting to the terms proposed by the other party, and that other party upon that belief enters into the contract with him, the man thus conducting himself would be equally bound as if he had intended to agree to the other party's terms.''

Defendant here first wrote to plaintiff asking for quotations ▮ on piling, giving the number and length desired and further described it as ''8'' top not less than 12'' butt.'' Plaintiff replied by giving quotations on 8'' top at 15 and 16 cents, and on 10'' top at 24 and 25 cents, and then added this statement: ''On your specifications you specify 8'' top a 12'' butt. It is impossible to get an 8'' top with this size butt and we are, therefore, quoting you price on 10'' top which will cover the 12'' butt.'' This was equivalent to saying to defendant: ''If you desire a 12'' butt you must take a 10'' top and the price will be 24 and 25 cents.'' The offer is not fairly susceptible of any other meaning. Defendant replied by saying: ''We sold on your quotations for piling and timbers and we are enclosing orders for some of the cars to be shipped at once,'' and stated in the letter, ''the butt to be 12'' minimum, and top as near 8'' as possible to get.'' Defendant ordered the piling specifying in the orders ''an 8'' top and a 12'' minimum butt.'' In the first order made by defendant appears a notation that the order contemplated 12'' minimum butt and that the butt on the 8-foot piling shall be ''not under 12'' but no attention paid to top.'' It is clear from this acceptance that defendant was bargaining for piling with a 12'' minimum butt. It was not concerned with the dimensions of the top, but insisted upon a 12'' butt. Reading the acceptance in conjunction with the offer, the conclusion is inescapable that defendant accepted the quotations on the 12'' butt regardless of the top dimensions. The offer clearly stated that to get a 12'' butt defendant must take the 10'' top, carrying the price of 24 and 25 cents. In other words, defendant's acceptance was not at variance with the offer of plaintiff, but an acceptance according to its terms.

Applying the foregoing basic principles of the law of contracts to the correspondence, we are of the opinion that de-

fendant must be held to have accepted the offer of plaintiff on piling with 10″ top and 12″ butt, and that it is bound by the quotations of 24 and 25 cents per lineal foot, unless it may be said that defendant attached a different meaning to the offer to the knowledge of plaintiff. That defendant did in fact attach a different meaning to the offer may be conceded. Is there anything in the record to justify a finding that the plaintiff knew that fact? We think not. True, in the letter of acceptance defendant stated, "Your quotations for all 8″ top piling are 15 and 16c," but whatever effect such language, standing alone, may have had as notice to plaintiff that defendant placed a different meaning on the offer than its terms clearly indicate, that statement was in legal effect nullified by what immediately followed in the letter, "the butt to be 12″ minimum, and top as near 8″ as possible to get." This statement, in the light of the offer made by plaintiff, was sufficient to justify plaintiff, acting as a reasonably prudent person, in concluding that defendant understood the transaction as plaintiff did, viz., that, if a 12″ butt was desired, it would be necessary to take a 10″ top, carrying the price of 24 and 25 cents. And neither do we think the fact that the orders and invoices described the piling as 8″ top and 12″ butt was sufficient to warn plaintiff that defendant was relying upon the quotations for the 8″ top, because, as the correspondence clearly indicates, it was the 12″ butt that was the controlling dimension in the minds of both parties, and that, according to the plain language of the offer, of necessity carried a 10″ top and a price of 24 and 25 cents.

We think also that, in the light of the transactions between the parties, plaintiff was justified in assuming that the last order called for piling of the same dimensions as those described in the previous orders.

The judgment is affirmed.

Mr. Chief Justice Callaway and Mr. Justice Ford concur.

Associate Justices Matthews and Galen, being absent, did not hear the argument and take no part in the foregoing decision.