WEYH ET AL., RESPONDENTS, v. CALIFORNIA INSURANCE CO., APPELLANT.

(No. 6,725.)

(Submitted January 13, 1931. Decided March 5, 1931.)

[296 Pac. 1030.]

*Messrs. Freeman, Thelen & Freeman* and *Mr. Jess L. Angstman,* for Appellant, submitted a brief; *Mr. J. P. Freeman* argued the cause orally.

*Mr. A. F. Lamey, Mr. Sam B. Chase* and *Messrs. Cooper, Stephenson & Hoover,* for Respondents, submitted a brief; *Mr. Lamey* argued the cause orally.

302

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, California Insurance Company, of San Francisco, has appealed from a judgment against it and in favor of Pete L. Weyh and Commercial Credit Company, of Great Falls.

The facts established on the trial are substantially as follows: On July 5, 1927, Weyh purchased from the Thurston

Motor Company, at Great Falls, an automobile, represented to him as a new 1927 model, on which he made a down payment and for which he entered into a conditional sales contract calling for twelve monthly payments of $74.49 each. This contract was immediately assigned by the Thurston Company to the Commercial Credit Company; the latter secured, in the name of Weyh, a policy of insurance in the defendant company through an insurance brokerage firm in Great Falls. The description of the automobile, as entered in the policy under the head "Warranted by the Assured," was taken from the contract and contains the following statements: "Year Model 1927 * * * Motor Number and Serial Number MC113664—S WE900 E * * * Date Purchased: Month 9 Year 27 New or 2d Hand—New." The policy was written in San Francisco and sent to the Commercial Credit Company; it was never in the possession of Weyh nor read by him.

While the "Motor Number and Serial Number" were correctly given, the statement as to date of purchase, the "Year Model" and age of the car were false. The car was sold by the Thurston Company to one of its salesmen in July, 1926; it was driven approximately 3,000 miles when, in July, 1927, it was given a coat of "duco," two new tires installed, and the speedometer set back to 250 miles and sold to Weyh as a new car. Weyh drove the car anywhere from 1,000 to 4,000 miles between the date of the purchase and date when it was insured, but knew nothing of the misstatements until the date of the trial. The car was destroyed by fire in June, 1928; thereafter the defendant discovered the falsity of the statements above pointed out and "cancelled" the policy, returning the premium paid to the Commercial Company by check, which check was cashed by the company.

The policy provides that it is made and accepted subject to all conditions and warranties therein contained and shall be void if any of them are violated by the assured; but further provides that, "if the assured has concealed or misrepresented

material facts or substance concerning the insurance or the subject thereof," the policy shall be void.

It was shown that the rate on a 1926 car would be higher than that on the same make of a car manufactured in 1927. This testimony was given by Ray C. Culver, a fire insurance agent residing in Helena, who, on cross-examination, further testified that "from the model and serial number we usually determine the year of rating; * * * the companies determine their rates through the automobile companies." "In the automobile department of the company they have some charts or information of some kind that can be referred to readily to ascertain * * * when the car was manufactured." "We have them in our company." "From the information contained * * * [in the policy] I would be able to determine the rate on that car." The witness was merely "acquainted" with the defendant company.

There can be no question but that a policy of insurance ▮▮▮▮ constitutes a contract on the terms of which the minds of the parties must meet if it is to become effective. The general rule is that, where statements made by the insured are made, or amount to, warranties, they become conditions precedent, and, regardless of materiality or the good faith of the insured, no liability attaches to the insurer unless they are literally true. (*Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092; *Mandoli* v. *National Council*, 58 Mont. 671, 194 Pac. 493.) On the other hand, if such statements are merely "representations," liability on the policy can be avoided only by proof that they were not only untrue, but were material to the acceptance of the risk, wilfully made with the intent to deceive, and were relied upon by the insurer. (*Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778; *Montana Auto Finance Corp.* v. *Federal Surety Co.*, 85 Mont. 149, 278 Pac. 116.)

Defendant contends that all statements found under the head "Warranted by the Assured" fall within the general rule stated, while plaintiffs insist that merely calling the

statements "warranties" does not make them such, and that the clause of the policy above quoted, rendering it void for misrepresentation of material facts, together with the fact that the policy does not specifically designate the provisions which will render it invalid, brings the policy within the rule respecting "representations," citing section 8129, Revised Codes 1921. The section cited reads: "A policy may declare that ▆ a violation of specified provisions shall avoid it, otherwise the breach of an immaterial provision does not avoid the policy." Read in connection with the companion sections quoted below, this section clearly refers to provisions in a policy other than warranties.

Under the authorities cited, plaintiffs' position would be sound, were it not for the fact that our legislature has seen ▆ fit to declare that "a statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty" (sec. 8125, Rev. Codes 1921), and, in harmony with the general rule, "a breach of warranty * * * in its inception prevents the policy from attaching to the risk" (sec. 8130, Id.).

As to how far the general rule respecting warranties and the above-quoted statutory rule, based on the general rule, are modified by the following provisions: "An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind" (sec. 8091, Id.); "the violation of a material warranty, or other material provision of a policy, on the part of either party thereto, entitles the other to rescind" (sec. 8128, Id.), we need not now determine, as here there was no omission to communicate information, i. e., the motor and serial numbers of the car, proving the falsity of the warranty as to the year in which the car was built, and, as will appear later, the warranties were material to the risk.

"A representation as to the age or year of manufacture of ▆ a motor vehicle is generally deemed a material one, and

an assured who has falsely stated such matters in his application, may be unable to collect insurance in case of damage by fire. Indeed, it has been held that the fact that the erroneous statement was made innocently will not aid the assured." (Huddy on Automobiles, 8th ed., 1139; Berry on Automobiles, 1570.) This is especially true when, as here, it is shown that a higher rate would have attached had the truth been known. (*Bennett* v. *Northwestern National Ins. Co.*, 84 Cal. App. 130, 257 Pac. 586.)

There is a respectable line of authorities, cited and commented upon in the above text-books, holding that, where the correct motor and serial numbers are given, but the insured innocently misstates the year of manufacture, and the insurer's agents had at hand means of readily ascertaining the year model from the correct information given, the insurer is charged with notice of the age of the car and is estopped to assert the misstatement as a defense. An examination of these decisions, however, discloses that the statements considered were usually construed as representations and not as warranties; thus in *North British & Mercantile Ins. Co.* v. *San Francisco Securities Corp.*, 30 Ariz. 599, 249 Pac. 761, on which plaintiffs' chief reliance is placed, the court declares the general rule as to warranties, but evades it by holding that, under the terms of the policy, although the statements are declared warranties, on construction of the entire policy, the statements made amounted only to representations. Arizona has no statutory provision such as ours, making statements respecting the person or thing insured express warranties; indeed, the only provision we have been able to find in that state on the subject is to the effect that the statements made in an application for a life insurance policy shall be deemed representations and not warranties.

Further, in the record before us, there is no showing that either the defendant company or its agent, if the company securing the application was agent for the defendant, had at hand or accessible such a chart as was described by the witness

Culver. The manager of the automobile department of defendant company by deposition testified: "We had absolutely no other information than that contained in the application."

Under our statutes quoted and the facts disclosed at the trial, the statement as to the year model of the automobile in question was a "material warranty" and its breach in its inception prevented the policy from attaching to the risk, in spite of the innocence of the insured and his agent, the Commercial Credit Company; their only recourse, if any, is against the Thurston Company, whose fraud on the sale of the car prevented them from collecting the insurance on proof of loss.

The judgment is reversed and the cause remanded to the district court of Hill county, with directions to dismiss the action.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied March 27, 1931.