DONNA KUCHINSKI, Plaintiff and Respondent, v. SECUR-
ITY GENERAL INSURANCE COMPANY, a Corporation,
Defendant and Appellant.

No. 10449
Submitted November 20, 1962. Decided March 15, 1963.
380 P.2d 889.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Bruce R. Toole (argued orally), Billings, for appellant.

Franklin A. Lamb (argued orally), Billings, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a jury verdict and judgment in favor of plaintiff, from the thirteenth judicial district, Honorable E. E. Fenton, District Judge, presiding.

The action was brought by plaintiff, respondent here, to recover for a loss suffered by plaintiff through an accident involving plaintiff's truck which allegedly was insured against such a loss by the defendant, appellant here.

On January 10, 1960, plaintiff purchased a blanket comprehensive liability fleet insurance policy from defendant's agent, Sturm. The policy included all vehicles and liability exposures that existed at the time of the contract. A fleet schedule attached to the policy designated only those vehicles which were covered by physical damage insurance.

In April 1960 the truck in question, a 1959 Ford tractor-truck, was deleted from the fleet schedule, *which fact is admitted in the pleadings.* On June 10, plaintiff, *aware of the deletion,* requested his wife to order cargo coverage from Sturm Agency to insure cargo in certain units which plaintiff intended to haul sheep with the following day. Plaintiff's wife called Sturm's office and gave the information to Sturm's employee, Mrs. Hurzeler, since Sturm was not there. Mrs. Hurzeler prepared a memo of the call.

Plaintiff's wife was unable to testify at the trial as to what she told Mrs. Hurzeler, but her written statement, which recited the facts that led up to and covered the telephone call, was introduced into evidence by defendant. The following is a relevant quote from that statement:

*"I told her to put $10,000 coverage for cargo on the 1959 Ford tractor* and the 1948 Omaha 40 foot trailer and $3,000 on the 1958 Ford with a 20 foot box and $7,000 on the 1952 Omaha 34 foot, six wheel trailer." (Emphasis added.)

Mr. Sturm testified that Mrs. Hurzeler interpreted the memo to him on Monday morning, June 13. The instructions were confusing and did not contain sufficient information to issue a written binder. It was noted that the 1959 Ford truck, upon which cargo coverage had been requested, previously had been deleted from the fleet schedule. Sturm tried to contact plaintiff so that the order could be clarified but he did not succeed until after the truck had been damaged on June 14, 1960.

At the trial Mrs. Hurzeler could not state the exact amounts of coverage ordered or identify the vehicles or units for which the coverage was requested. A statement given by Mrs. Hurzeler to the insurance adjuster on or about June 21, 1960, was introduced and admitted into evidence. The statement recites that Mrs. Hurzeler received the telephone call from plaintiff's wife and that after Mrs. Kuchinski identified herself she said she wanted some cargo insurance on some trucks. The statement continues:

"She gave me some figures on the amounts. She then told me that she wanted $7,000 on the truck and $3,000 on the 20 foot box. She also listed a 1948, 40 foot transport trailer and a 1959 Ford truck. They wanted $10,000 on that."

Mr. Sturm testified that in his dealings with plaintiff he had been instructed by plaintiff that in all instances plaintiff was to have insurance on all of his vehicles being used on the highways. Sturm, over objection, was permitted to testify that he bound the defendant for collision and upset coverage on the 1959 Ford and that this was what he thought plaintiff wanted. Also over objection, Sturm answered a question concerning the general practice of agents in binding their companies where instructions from a customer are not clear.

Defendant's adjuster investigated the accident and had the

truck taken to a garage in Billings, which was not the place that plaintiff wanted the truck to be taken.

At the conclusion of the submission of evidence defendant moved for a directed verdict. The motion was denied.

After verdict and judgment the defendant moved for a new trial and for judgment notwithstanding the verdict. Those motions were denied, and defendant appealed.

The defendant cites eleven specifications of error. Specifications of error 1 and 2 concern the admissibility of testimony of the agent, Sturm. Specifications 3, 4, and 5. deal with the overruling of defendant's motions. Specifications of error 6 through 11 concern the refusal of certain instructions offered by defendant. To arrive at our decision we need only consider specification of error number 3 even though the other specifications may have merit. Specification of error 3 is as follows:

"The court erred in failing to grant appellant's motion for a directed verdict."

■ " 'A motion for a judgment of non-suit, or a motion for a directed verdict, is in effect a demurrer to the evidence and presents to the trial court a question of law to be determined [Citing cases.], and where either of such motions is made in the trial court and overruled, the question of the sufficiency of the evidence to support the verdict and judgment is before this court on an appeal from the judgment.' La Bonte v. Mutual Fire etc. Ins. Co., 75 Mont. 1 [10], 241 P. 631, 634.

■ "If a motion for a new trial has not been made, the court will review the evidence to determine whether there is any substantial evidence to justify the verdict. [Citing cases.]" Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 55, 33 P.2d 553, 556. See Estate of Dillenburg, 136 Mont. 542, 349 P.2d 573.

In the present case, a motion for a new trial was made. However, for purposes of our review, we need not consider the effect of the denial of that motion. We need merely deter-

mine whether there is any substantial evidence to justify the verdict.

There was no evidence to justify the verdict. There was no evidence upon which to base a formation between the parties of a contract for collision and upset coverage, a prerequisite to the awarding of a verdict for plaintiff. Thus, the court erred in overruling defendant's motion for a directed verdict.

At this point we will consider solely the question of whether or not plaintiff and defendant entered into a contract of insurance for collision and upset.

The defendant's position is that there was no proof whatsoever of the formation of a contract to insure plaintiff for collision and upset for physical damage of the vehicle in question. We agree with defendant's position.

"It is elementary that, in order to effect a contract, there must be an offer by one party and an unconditional acceptance of it, according to its terms, by the other." Beale v. Lingquist, 92 Mont. 480, 488, 15 P.2d 927, 930. An insurance policy is a contract. Weyh v. California Insurance Co., 89 Mont. 298, 296 P. 1030.

Our analysis of the facts in the present case is that plaintiff made an offer to purchase cargo coverage for the vehicle in question. Defendant's agent, Sturm, accepted that offer but went further and purportedly accepted an offer for collision and upset coverage, as the agent testified, by binding the defendant. There is absolutely no evidence in the record to the effect that plaintiff ordered any insurance other than cargo coverage for a unit which was to be pulled by the tractor-truck in question. Plaintiff told his wife to order *cargo coverage*. By the wife's statement it is clear that *she ordered only cargo coverage*.

In J. Neils Lumber Co. v. Farmers' Lumber Co., 88 Mont. 392, 397, 293 P. 288, this court, in setting forth certain general propositions, said that if an acceptance goes beyond the terms

of an offer there is a counter offer, but did not state what effect that acceptance has.

In Brophy v. Idaho Produce and Provision Co., 31 Mont. 279, 286, 78 P. 493, 495, quoting from Minneapolis & St. Louis Ry. v. Columbus Rolling Mill Co., 119 U.S. 149, 7 S.Ct. 168, 30 L.Ed. 376, this court stated:

" '* * * [A]n acceptance upon terms varying from those offered is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested'."

We need not decide a question of whether or not there was a rejection. We are concerned with the question of whether or not there is a contract if an acceptance goes beyond the terms of an offer. As is apparent from our discussion upon this point, we feel that the evidence clearly shows that the acceptance, if any, of coverage for collision and upset went beyond the offer for cargo coverage. There could not then be a binding contract between the parties for collision and upset coverage.

In going one step further, we will assume at this point that there was the entering into of a contract between the parties.

It seems that the agent Sturm's misinterpretation as to what coverage plaintiff wanted on the 1959 Ford tractor-truck arose because the tractor-truck previously had been deleted from the fleet schedule as to the coverage now contended, and cargo coverage would not cover collision and upset on the tractor-truck but just the particular cargo carried in the unit pulled by the tractor. Also, there was the fact that Sturm had been instructed by plaintiff that he was to have insurance on all of his vehicles being used on the highways.

Since plaintiff knew that the tractor-truck had previously been deleted from the fleet schedule his only intention was to have cargo coverage for the particular unit, which was to be pulled by the tractor. That was what plaintiff instructed his wife to order and that was all that she ordered. We think

that the testimony and the statements unequivocally show that there was never any order for collision or upset coverage on the 1959 Ford tractor-truck.

An essential element of a contract is the consent thereto of the parties. R.C.M.1947, § 13-102. The consent must be free, mutual, and communicated by each to the other. R.C.M.1947, § 13-301. R.C.M.1947, § 13-316, provides: "Consent is not mutual, unless the parties all agree upon the same thing in the same sense. But in certain cases defined by the chapter on interpretation, they are to be deemd so to agree without regard to the fact." R.C.M.1947, § 13-702, reads: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Plaintiff argue that "we are here concerned with whether, when insurance is ordered by an insured who then has a blanket policy, and the agent understands the order to include collision insurance, the agent has the authority to bind the company for the period of time necessary to complete the details." Plaintiff contends that he intended to have collision coverage and since the agent accepted that coverage, there was a contract to that effect. If that intention existed, it differed from his manifest intention, which was to have cargo insurance only.

Plaintiff's contention is answered by Polish v. Severson, 68 Mont. 225, 230, 216 P. 785, 787, as follows: "It is elementary that to constitute a contract the minds of the parties must have met upon the same thing at the same time." See also similar language in Weyh v. California Insurance Co., supra. If the actual intention is different from the manifested intention, then the manifested intention prevails. J. Neils Lumber Co. v. Farmers' Lumber Co., supra.

There being no proof of the entering into of a contract between the parties for collision and upset insurance, the dis-

trict court erred in denying defendant's motion for a directed verdict.

The judgment is reversed and the cause is remanded with instructions to the district court to enter judgment for the defendant.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and JOHN CONWAY HARRISON concur.