WORTMAN ET AL., APPELLANTS, v. LUNA PARK AMUSE-
MENT CO., RESPONDENT.

(No. 4,436.)

(Submitted September 15, 1921.  Decided October 10, 1921.)

[201 Pac. 570.]

*Ejectment — Corporations — Sale of Property — Board of Di-
rectors—Powers—Cross-examination—Technical Violation of
Rule—Harmless Error.*

Ejectment—Plaintiff must Prevail upon Strength of Own Title.
    1.  In ejectment, plaintiff must prevail, if at all, upon the integrity
    of his own title, and not the infirmity of that of defendant.

Same—Cross-examination—Technical Violation of Rule—Harmless Error.
    2.  A technical violation of the rule of cross-examination in per-
    mitting defendant company to show affirmatively by plaintiff's wit-
    ness that title to the property in question was in it and not in
    plaintiff—a vital issue in the case—was not reversible error in the
    absence of a showing of prejudice.

Same—Corporations—Boards of Directors—Power to Sell Assets—Statutes.
    3.  Under the common-law powers reserved to corporations by the
    proviso in section 3897, Revised Codes, and enumerated in a general
    way in sections 3833 and 3889, the board of directors of a going
    corporation could, in the proper pursuit of its business and within the
    purposes of its creation, against the dissent of a minority of its
    stockholders, sell a leasehold interest in realty with improvements
    thereon, and where such sale was made before plaintiffs had judg-
    ment against the selling corporation, they acquired no title under
    execution sale, and nonsuit was properly granted in their action in
    ejectment against the purchaser.

*Appeals from District Court, Silver Bow County; John V.
Dwyer, Judge.*

ACTION by George H. Wortman and Louis Frank, a copart-
nership doing business under the firm name and style of the

1.  The general rule that plaintiff must recover, if at all, on the
strength of his own title is discussed in note in 18 L. R. A. 781.

3.  On the power of officers or majority stockholders, against consent
of minority, to sell property of corporation essential to its existence as a
going concern, see note in 35 L. R. A. (n. s.) 396.

Power of directors to sell property of corporation without consent of
stockholders, see note in 5 A. L. R. 930.

George H. Wortman Company, against the Luna Park Amusement Company. From a judgment for defendant and an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

*Mr. W. D. Kyle* and *Mr. Earle N. Genzberger*, for Appellants, submitted a brief; *Mr. Genzberger* argued the cause orally.

A defendant is not permitted to prove his affirmative defense on cross-examination of plaintiff's witness, nor to cross-examine upon matters not touched upon direct examination. (*Davis* v. *Morgan,* 19 Mont. 141, 47 Pac. 793; *Brophy* v. *Downey,* 26 Mont. 252, 67 Pac. 312; *Pelican* v. *Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778; *Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673.)

As a sale, the attempted transfer was void, it not having been authorized by the stockholders of the Clearmont Amusement Company, under section 3897 of the Revised Codes. In the alleged sale made by the Clearmont Company to the respondent company, the stockholders of the former company took no action whatsoever, the board of directors thereof alone assuming to authorize it and direct the execution of the proper instruments by its officers. This sale was, therefore, in direct violation of section 3897 of our Code, prescribing the procedure by which a corporation may sell all of its property, including the calling of a meeting of the stockholders to consider the sale of all or a part of the corporate property, and the necessity of "stockholders representing at least two-thirds of the whole number of shares of the capital stock of the corporation, then outstanding and of record on the books of the company," authorizing such sale. As said by this court in the case of *Forrester* v. *Boston & M. etc. Min. Co.,* 21 Mont. 544, at page 553, 55 Pac. 229, 353: "At com-

mon law, neither the directors nor a majority of the stock-holders have power to sell or otherwise transfer all the property of a going, prosperous corporation, able to achieve the objects of its creation, as against the dissent of a single stockholder. This doctrine is firmly established by the authority of adjudged cases, and rests upon the soundest principles."

After this decision, the legislature of this state enacted what is now section 3897 of the Revised Codes, enabling a sale by two-thirds of the stockholders, upon their complying with the provisions of that law. The statement of the supreme court in the *Forrester Case* with reference to the property of mining corporations applies with equal force to section 3897: "There is strong reason to believe that the legislative assembly intended to prevent the alienation of the mining property specified in section 492, in any and all cases without the consent of two-thirds of the shares." Such consent not having been granted by the stockholders of the Clearmont Amusement Company, regarding the sale of its property to the respondent company, such sale is just as void, as were the acts of the B. & M. Co., which were held void in the *Forrester Case.* The sale being void, the appellants, as judgment creditors of the Clearmont Company, had the right to resort to its specific property, for the satisfaction of their judgment. (*McShane* v. *Carter,* 80 Cal. 310, 22 Pac. 178; *Porter* v. *Anglo etc. Nat. Bank,* 36 Cal. App. 191, 171 Pac. 845; *Williams* v. *Gold Hill Min. Co.,* 96 Fed. 454; *Williams* v. *Gaylord,* 102 Fed. 372, 42 C. C. A. 401; *Id.,* 186 U. S. 157, 46 L. Ed. 1102, 22 Sup. Ct. Rep. 798 [see, also, Rose's U. S. Notes]; *Duke* v. *Markham,* 105 N. C. 131, 18 Am. St. Rep. 889, 10 S. E. 1017.)

At the meeting of the stockholders when the action of the board was attempted to be ratified, 18,262 shares were voted in favor of, while 14,930 shares were voted against, the

proposition. This being but a majority, and not a vote of two-thirds of the outstanding capital stock, necessarily, the transfer of all the corporate property of the Clearmont Company failed of ratification by the stockholders, for if a majority of the shares were without power to authorize the sale, they certainly could not ratify it. (23 Am. & Eng. Ency. of Law, 2d ed., 890; *Martin* v. *Zellerbach,* 38 Cal. 300, 99 Am. Dec. 365; *Pacific Electric Co.* v. *Los Angeles,* 118 Fed. 746, 753; *Pennsylvania Co.* v. *Cole,* 132 Fed. 668, 678, 679.)

*Messrs. Templeman & Sanner, Mr. Fred. J. Furman* and *Mr. Leo J. Hanley,* for Respondent, submitted a brief; *Mr. Sydney Sanner* argued the cause orally.

Even if the cross-examination complained of by appellant were regarded as technically improper, the error would not be one for which reversal could follow. The business of a court upon the trial of an issue of fact is to ascertain the essential truth of the matter before it. It is desirable, of course, that this should be done in the orderly, logical way; but, if it is done, the mode is of secondary importance and departures from strict propriety become error nonprejudicial in character. This is the necessary result of the statute and of a long line of our decisions. (Rev. Codes, secs. 6593, 7118; *White* v. *Chicago, M. & P. S. Ry. Co.,* 49 Mont. 419, 143 Pac. 561; *Brophy* v. *Downey,* 26 Mont. 252, 67 Pac. 312; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071; *Hanson Sheep Co.* v. *Farmers' etc. Bank,* 53 Mont. 324, 163 Pac. 1151.)

Appellants contend that the transaction was futile, among other things, because "not authorized by the stockholders of the Clearmont Company under section 3897, Revised Codes." The section is part of an Act (Chap. 103, Laws 1905) entitled "An Act to enlarge the powers of corporations as to disposing of or selling their property," *etc.,* and it is obvious from the title, as from the above provision, that its purpose was not

to restrict or forbid what had theretofore been permissible. The occasion for its enactment was certain decisions of this court expressing the common law that the sale of the whole of the corporate property of a going and prosperous concern was not legally possible as against the dissent of a single stockholder; but it was also a part of that same common law that a corporation might sell or dispose of a part of its property, and might do so through its board of directors. Especially is this true where the sale is pursuant to its prior contract or in furtherance of its business. (*Forrester* v. *Butte & M. etc. Min. Co.,* 21 Mont. 544, 55 Pac. 229, 353; *Shaw* v. *Hollister L. & Imp. Co.,* 166 Cal. 257, 135 Pac. 965; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 99 Am. Dec. 300; *People* v. *President etc. of College of California,* 38 Cal. 166; 1 Clark & Marshall on Private Corporations, p. 436 *et seq.;* 10 Cyc. 764, sec. 13 *et seq.*) Here, then, is one of "the powers of the board of directors in relation to the disposition of property" which section 3897 by its express terms does not restrict. A corporation may still, therefore, dispose of a part of its property through action by its board of directors without observance of section 3897; and it follows that before a sale can be invalidated as contrary to that section, it must appear that the sale was of the whole of the corporate property. (*Shaw* v. *Hollister Land Imp. Co., supra; Bradford* v. *Sunset Land & Water Co.,* 30 Cal. App. 87, 157 Pac. 20.)

MR. COMMISSIONER SPENCER prepared the opinion for the court.

Action in ejectment. The complaint herein contains the usual allegations of ownership in the plaintiff of certain real property, particularly described as "certain portions of sections 29 and 32, township 3, north of range 7 west, as follows: Lake Avoka situated in the northeast quarter of section 29, township 3, north of range 7 west," together with certain

improvements situated thereon—possession thereof by defendant, demand and refusal to deliver possession, and claim for damages. The answer tenders the general issue. At the close of plaintiff's case, motion for nonsuit was granted, and judgment entered accordingly. Motion for a new trial was denied, and appeal is from the order denying the motion and from the judgment.

The evidence discloses that on May 22, 1911, Tidewater Investment Company, a corporation (hereinafter referred to as Tidewater Company) made and entered into an agreement with Clearmont Amusement Company, a corporation (hereinafter referred to as Clearmont Company) by the terms of which the Tidewater Company leased and let unto the Clearmont Company certain real property situated in Silver Bow county, Montana, a short distance south of the city of Butte, for a period of fifteen years, ending March 31, 1926, and commonly known as Lake Avoka, together with certain privileges to be exercised and enjoyed in connection with the use thereof. On April 16, 1912, the Tidewater Company assigned by indorsement thereon all its right, title and interest in the lease to the defendant, and on the same date deeded to defendant certain lands, which included the lands embraced within the terms of the lease. The lease, among other things, provided in substance that the Clearmont Company should have the right to erect a "dancing pavilion or other improvements designed for public amusement" upon the leased premises, but that such right should be exercised on or before April 1, 1912, and the work to make such improvements diligently prosecuted and completed within a reasonable time thereafter, and that if not so done and prosecuted such right could be declared forfeited by the Tidewater Company, lessor. It was further provided in the lease that if the Clearmont Company did not exercise its right to so construct other and additional improvements the Tidewater Company then had the option for a period of one year from and after April 1, 1913,

to purchase ''the improvements, equipment, fixtures, and all property of the party of the second part [Clearmont Company] had or enjoyed in connection with the premises aforesaid, excluding therefrom only the stock of merchandise of the party of the second part then on hand, for the sum of $10,000 cash.'' The evidence further discloses that on November 19, 1913, the defendant notified the Clearmont Company that as assignee of the Tidewater Company it elected to exercise its option to purchase, and tendered $10,000 cash, and that on November 15, 1913, at a special meeting of the board of directors of the Clearmont Company, the cash tender by the defendant was accepted, and the president and secretary authorized to execute the necessary instruments to consummate the sale. Pursuant to such authority a bill of sale was thereupon made, executed and delivered to the defendant company, which then went into possession. On May 4, 1914, at the annual meeting of the stockholders of the Clearmont Company, all the acts of the directors, stockholders, and officers of the company from the earliest time to that date were ratified, confirmed and approved in every particular. On May 4, 1916, appellants herein obtained a verdict in an action wherein they were plaintiffs and Clearmont Amusement Company was defendant, and judgment was subsequently made and entered thereon. On June 23, 1916, execution was issued, and thereafter the sheriff of Silver Bow county, under authority thereof, pretended to sell to appellants the leasehold interest of the Clearmont Company, as evidenced by the lease hereinabove mentioned, together with all improvements situated thereon, for the sum of $7,500, and on July 22, 1916, executed certificate of sale thereof to these appellants. On July 26, 1917, the then sheriff of Silver Bow county made, executed and delivered to the appellants a deed for the property mentioned in his return of sale under the execution. It is further shown that the reasonable rental value of the property involved herein is $1,500 per annum.

Appellants have specified thirteen assignments of error, but all are comprehended in the solution of two questions: First, did the Clearmont Company have title to the property levied upon and sold under execution in June, 1916, at the time of such levy and sale? and, second, was it error to permit defendant to cross-examine plaintiffs' witness for the purpose of showing, not only that plaintiffs had no title to the property in question when this action was commenced, but affirmatively showing that title to the property reposed in defendant?

Discussing these questions in inverse order, it is sufficient to **[1, 2]** say of the latter that appellants must prevail, if at all, upon the integrity of their own title, and not the infirmity of their adversary's (*McKinstry* v. *Clark & Cameron,* 4 Mont. 370, 1 Pac. 759; *City of Helena* v. *Albertose,* 8 Mont. 499, 20 Pac. 817), and hence, at the time of the levy of the writ of execution and the pretended sale by the sheriff of Silver Bow county under the writ, if the Clearmont Company had no title to the property levied upon, the sale was an empty proceeding, the appellants obtained no title, and a nonsuit was inevitable. We think that the appellants in direct examination of their own witness opened the door sufficiently to justify the cross-examination complained of, but, if not, it cannot be said the error was more than a technical violation of the rule of cross-examination upon a vital issue in the case, and therefore not reversible error. (*Hanson Sheep Co.* v. *Farmers & Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151.)

The remaining question worthy of consideration in the **[3]** determination of these appeals involves the applicability of section 3897, Revised Codes, invoked by appellants in opposition to the validity of the sale of the property involved herein by the Clearmont Company to the respondent. In the absence of other objection, if the provisions of section 3897, Revised Codes, do not sustain the contention of appellants in this regard, clearly they were without title upon which to base their action. Prior to the enactment of section 3897, *supra,*

this court had occasion to construe the various statutes pertaining to the sale of all or a portion of its property by corporations generally (*Forrester* v. *Boston & Mont. etc. Min. Co.,* 21 Mont. 544, 55 Pac. 229, 353), and in an elaborate and exhaustive opinion by Mr. Justice Pigott laid down both the statutory and common-law rules governing the powers of directors upon such sales. Section 3897, *supra,* was thereafter enacted as a curative measure to obviate what appeared to be patent incongruities in the then existing law, and to prevent small minority stockholders from thwarting the will of the majority in making a sale otherwise valid under common law and for the best interest of the corporation. To summarize some of the rules of common law so far as applicable to the instant case, a solvent and prosperous corporation could sell all of its assets only by unanimous consent of its stockholders; if insolvent and unable to execute the purposes of its creation, by the directors if the best interests of the stockholders demanded; in the proper pursuit of its business, and within the purposes of its creation, sell any or all assets even against the dissent of a minority or perhaps a majority of its stockholders. (*Forrester* v. *Boston & M. etc. Min. Co., supra.*) In this case, it is not suggested in the record that the sale in question was of all the assets of the corporation, nor that the corporation was insolvent, but the record affirmatively shows that subsequent to the sale a new board of directors was elected, and the Clearmont Company continued to live as a corporate entity. The proceedings leading up to and the consummation of the sale of the property to respondent were not in harmony with the general scope and meaning of section 3897, *supra,* which comprehends a sale of all rather than a part of the corporate property, but rather in consonance with the proviso contained therein, reserving to the corporation and the board of directors the powers granted to them by the common law, and enunciated in a general way in sections 3833 and 3889 of the Revised Codes. Nor can it be said that sec-

tion 3897, Revised Codes, intended to limit or restrict those powers, for the title of the Act itself declares its purpose to be "to enlarge the powers of corporations as to disposing of, or selling their property," *etc.,* so that its general intent was to grant the corporation more power rather than to limit or restrict, and as further emphasis of this general intent reserved the common-law powers by a special proviso contained therein. Sections 3889 and 3833, Revised Codes, in substance, and so far as applicable here, declare that corporations have power to purchase, hold and convey real and personal property, and that they shall conduct the affairs of the corporation through a board of directors. By failing, either specifically or by fair implication, to alter the common-law rules the common law must still remain the rule of decision (*Forrester* v. *Boston & M. etc. Min. Co., supra,* and citations), and in the instant case the board of directors of the Clearmont Company, acting under power granted by both the common law and statute, were clearly within their rights, and hence it is of no importance whether respondent assumed to acquire its title by virtue of an option reserved in the lease or otherwise, for the undisputed record is that an offer of $10,000, accompanied by tender, was made by respondent, accepted by the Clearmont Company, and the property delivered, which is all the law required to make a valid sale. We conclude, therefore, that the Clearmont Company made a valid sale of the property in question to the respondent prior to the levy of execution upon the same property, on behalf of appellants, and that appellants were therefore without title upon which to base their action.

We find no error in the record, and therefore recommend that the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

*Affirmed.*

Rehearing denied November 7, 1921.