SCHWARTZ v. INSPIRATION GOLD MINING CO.

No. 1424.

District Court, D. Montana.

Aug. 1, 1936.

Joseph Binnard, Alex C. Rodger, H. L. Maury, and A. G. Shone, all of Butte, Mont., for plaintiff.

Alf C. Kremer and H. D. Carmichael, both of Butte, Mont., for defendant.

BALDWIN, District Judge.

This suit is brought for the purpose of enjoining the defendant from carrying into effect a certain resolution said to have been passed by a majority of its stockholders at a special meeting held on December 9, 1935.

In the bill of complaint, after stating the necessary jurisdictional facts, plaintiff alleges: (1) That the defendant is a corporation created, organized, and existing under and by virtue of the laws of the state of Montana, and operating quartz gold mines and a mill for the reduction of quartz gold ores in Madison county, Mont.; (2) that the plaintiff is the owner of 6,000 shares of the capital stock of the defendant corporation and registered as such upon the books of the defendant; (3) that said stock is of the value of $1 per share at the present, but, if the acts, hereinafter described and threatened to be done by the defendant, are done, the said stock will immediately be of no value at all; (4) that on March 25, 1935,

and at the date of the filing of the complaint herein, the defendant had and still has in said mine large bodies of commercial gold ore disclosed and ready to be mined and sent through the mill owned by the defendant, consisting in part of an ore chute approximately 200 feet in length, with an average width of from 3 to 4 feet, extending westerly on the 1,000-foot level of one of its said mines containing approximately 103,057 tons of ore of the value of $6.50 per ton, from which can be produced 250 tons of ore per day at a total operating cost of $4.50 per ton, which can be operated at a net profit to plaintiff of $2 per ton; (5) that on March 25, 1935, the defendant had and still has mining supplies, ore broken in mine and dump, small tools and utensils, mine timbers, mine and mill buildings, mining machinery and equipment, electrical transformers and power line, mine camp equipment, mine furniture and fixtures, office furniture and fixtures, drills and spare parts thereof, and automobiles of the value of $365,834.20, "easily worked and accessible profit making mines, and sufficient mill, milling machinery mining tools, supplies and other equipment necessary to make instant profit and sufficient to pay its stockholders 10¢ per share per year dividend for a period of more than ten years"; (6) that on December 9, 1935, the officers and directors of the defendant corporation gave notice that "there would be a meeting of the stockholders of said corporation for the purpose of submitting to it a certain proposal of an unformed corporation, whose pre-natal name is Bear Gulch Mining Company, to be incorporated when, where and for how much and for how long in a period of existence, being untold and undecided but which the officers of the defendant will in due time disclose"; (7) that the notice so given "contained the following words, and only the following words, as to the purpose of the meeting, and as to what business would be transacted at said meeting"; (8) a copy of the notice is set out in the bill of complaint, and so far as it is material for the purpose of this decision is as follows: "To the stockholders of the Inspiration Gold Mining Company: In accordance with a resolution adopted by the board of directors of the Inspiration Gold Mining Company on the 7th day of November, 1935, notice is hereby given that a special meeting of the stockholders of the above-named company will be held at the principal office of the company in room 204 in the O'Rourke Estate Building, City of Butte, County of Silver Bow, State of Montana, on Monday, the 9th day of December, 1935, at the hour of eight o'clock p. m., for the purpose of considering a proposition to sell, assign, transfer and set over unto the Bear Gulch Mining Company, a Montana corporation hereafter to be formed, all of the right, title and interest of said company in and to that said mining lease and option dated June 10, 1932, made and entered into by Worder I. * * * Higgins * * * (and others), parties of the first part and Frank C. Ball, of Butte, Montana, party of the second part, in and to certain mining property situate, lying and being in the Tidal Wave inorganized mining district, Bear Gulch, Madison County, Montana, and which said mining lease and bond was on the 18th day of July, 1932, assigned by the said Frank C. Ball to the Inspiration Gold Mining Company and under and by virtue of which said assignment the Inspiration Gold Mining Company entered upon and holds possession of said mining property. The consideration for said transfer is the immediate taking over of said property by the Bear Gulch Mining Company, the Bear Gulch Mining Company agreeing to provide a fund of sufficient cash, as a working fund, for the further development of said property, to comply with all the terms and conditions of said lease and bond as aforesaid, and to preserve the same intact for the said Inspiration Gold Mining Company for a period of five years from the date of said transfer and assignment to the Bear Gulch Mining Company, * * * the Bear Gulch Mining Company agreeing at the end of said term to re-assign and reconvey to the Inspiration Gold Mining Company the said mining lease and option of June 10, 1932, unless further extension is granted said Bear Gulch Mining Company by the directors of said Inspiration Gold Mining Company, and other valuable consideration, and for the transaction of any other business which may lawfully be considered at said meeting"; (9) "that the said notice is too indefinite and uncertain to be any notice at all of what business would be transacted. That the artificial person with which the defendant pretends to deal had not been formed at the time of the meeting, to-wit, December 9, 1935. That the amount of money to be advanced and the consideration of the so-called transfer intended was not named in the notice and therefore the entire notice was a nullity"; (10) "that notwithstanding that no notice had been given, certain stockholders of the defendant met and a majority of them voted that said

indefinite contract be entered (into). That the same is too indefinite as to a consideration from the so-called Bear Gulch Mining Company to be any contract at all, or to be giving any consideration to the defendant for the transfer of its properties; that the same may be so small a consideration as to be virtually a gift to the so-called Bear Gulch Mining Company of all of the defendant's properties which are of great value and which give a value of $1 per share to the stock owned by plaintiff in said defendant. That the officers of the said Bear Gulch Mining Company, if it is ever formed, and plaintiff alleges that it will be unless prevented by the order of this court, will be largely the same as the board of directors of the defendant company"; (11) "that the said Bear Gulch Mining Company will procure the possession of and the title to properties of the defendant company, of the value of more than one million dollars, and much of said property is perishable from use and will be used up and destroyed by the so-called Bear Gulch Mining Company, if possession of it is given under the said action of the stockholders and officers, voted to be done and threatened to be done by them at the said meeting of the 9th day of December, 1935; (12) that there is no plain, speedy or adequate remedy at law for the plaintiff; (13) that "plaintiff appearing at said meeting notified all other persons there present and the president and other officers of the said defendant of her protest and objection to any such disposition of defendant's property, as contemplated by the officers and the stockholders there present"; (14) said protest is set out in abbreviated form in the bill of complaint herein. It is addressed "To the Inspiration Gold Mining Company, to all of the members of the board of directors thereof, et al." Therein plaintiff, as a stockholder of the Inspiration Gold Mining Company, "protests and objects to any and all consideration and acceptances thereof, in whole or in part, of a proposition to sell, assign, transfer and set over unto Bear Gulch Mining Company, a Montana corporation, not yet formed, any rights, or any title or interest of the Inspiration Gold Mining Company, in or to any lease or option, and particularly objects to any transfer of the option of June 10, 1932," hereinbefore referred to, "which lease and option is the property of Inspiration Gold Mining Company"; plaintiff also objects "to acceptance of any and all propositions of Bear Gulch Mining Company or any other person to buy 600,000 shares, or

any shares of treasury stock of Inspiration Gold Mining Company, at seven and one-half cents per share, or at any price less than par value of said stock, to-wit, $1.00 per share." Plaintiff also asserts therein that the defendant company have sold its stocks to her within the last six months at a price as high as $2.50 per share; that "the acceptance of said proposal is fraudulent and destructive of the rights of all stockholders in said company, except such as are interested or will become interested in the Bear Gulch Mining Company"; that plaintiff does not intend to become interested therein. "That the money to be paid over as development fund is not specified. Therefore, the consideration is so indefinite that no notice of what the actual consideration is to be has been given to any stockholders. The consideration may be unconscionably small. * * * The Bear Gulch Mining Company, organized or still to be organized, would procure the possession of properties of Inspiration Gold Mining Company and title to such property for a period of five years, and as long as the directors of said Bear Gulch Mining Company desire, and said directors may, by a majority of the directors of Inspiration Gold Mining Company procure properties and assets totaling the sum of $1,673,381.08. If said proposition be accepted the said Bear Gulch Mining Company will take and convert to its own use, exhaust and dispose of, without accounting for same, ore of the Inspiration Gold Mining Company, broken in mine and on dump in the sum of $367,500.00 and ore developed and blocked out in mine of said company in the sum of $945,000. The entire scheme is conceived in the desire of a few officers of the Inspiration Gold Mining Company to destroy the value of all property of the company and transfer it to a new company to be controlled by them and to defraud said Inspiration Gold Mining Company to the extent of about three million dollars." Plaintiff therein notified all persons "that if there is any attempt to carry through the proposition or any of the proposals in whole or in part, the undersigned stockholders will proceed at once, in equity to enjoin such acceptance and to annul it if it should be made, or pretended to be made"; and (15) "that the plaintiff was a share holder at the time of the transaction of which she complains and that this suit is not a collusive one to confer on the Court of the United States jurisdiction of a case of which it would not otherwise have cognizance. That the plaintiff cannot set forth

the causes of her failure to obtain action of the corporation to reject such offer with any greater particularity than has been hereinbefore set forth"; and (16) plaintiff prays that she "have an injunction of this court preventing the defendant from entering into any agreement with the so-called Bear Gulch Mining Company, to be formed; * * *. that plaintiff have such other and further relief as is meet and equitable. * * *"

The question presented for consideration is, Were the defendant corporation, its officers and stockholders acting in excess of their authority in doing what they are said in the bill of complaint on file herein to have done?

 The answer to this question depends on the result of measuring the facts pleaded in the bill of complaint in this case by the rules of the common law if and as changed by statute in Montana. The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, or the Codes, is the rule of decision in all of the courts of this state (sections 5672 and 10703, Rev.Codes Mont. 1921); however, the rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the codes or other statutes of the state of Montana. The Codes establish the law of this state respecting the subject to which they relate and their provisions, and proceedings under them are to be liberally construed with a view to effect their object and to promote justice (section 4, Rev.Codes Mont.1921); and, in the construction of these provisions of the Montana Code it must always be borne in mind that a statute is not presumed to work any change in the rules of the common law beyond what is expressed in its provisions or fairly implied in them, in order to give them full operation. For the written law to effect a repeal of those doctrines of the common law which are not unsuited to our conditions, the intent of the Legislature to bring about the change must be clear; and, if the intent be not fairly evident, the common law remains the rule of decision. Forrester v. Boston, etc., Mining Company, 21 Mont. 544–556, 55 P. 229, 353; State ex rel. La Point v. District Court, 69 Mont. 29, 220 P. 88; Conley v. Conley, 92 Mont. 425–436, 15 P.(2d) 922.

It has long been settled law in Montana: (1) That at common law neither the directors nor a majority of the stockholders have power to sell or otherwise transfer all of the property of a going, prosperous corporation, able to achieve the objects of its creation, as against the dissent of a single stockholder; (2) that at the common law a corporation which is insolvent or unable to execute the purpose for which it was created may, by its directors (or, at least, by the directors and a majority of its stockholders), sell or assign all of its property when the best interests of the stockholders would be served thereby; (3) and that in the proper pursuit of its business, and within the purpose for which it was created, a corporation may by the common law sell, lease, or mortgage any part of its property, though the minority or perhaps the majority of the stockholders dissent. Forrester v. Boston & Montana Mining Company, 21 Mont. 544, 553, 556, 55 P. 229, 353; Wortman v. Luna Park Amusement Company, 61 Mont. 89, 97, 201 P. 570.

 It is evident from the facts stated in the bill of complaint in the case at bar that, at the time the action therein complained of was taken, the defendant, Inspiration Gold Mining Company, a corporation, was a solvent and prosperous corporation well able to achieve the objects of its creation. It necessarily follows that neither its directors nor its stockholders had a right to sell its property against the dissent of the plaintiff in this case unless the authority was granted by statutory provision in Montana. Forrester v. Boston & M. Mining Company, 21 Mont. 544, 552, 553, 55 P. 229, 353.

Section 6004 of the Revised Codes of Montana, as amended by the Act approved February 20, 1931 (Sess.Laws 1931, pp. 103–107, c. 42, § 1), is the only statute in existence in Montana relating to the procedure for sale, lease, etc., of corporate property. So far as it is material here that statute is as follows:

"The board of directors * * * of any stock corporation heretofore or hereafter organized under the laws of the * * * State of Montana, * * * whether solvent or insolvent, whether a going concern or otherwise, including mining corporations, shall have power * * * to call by resolution a meeting of the stockholders of such corporation, appearing as such upon its books, and entitled to vote at such meeting, * * * for the purpose of considering the question of selling, leasing, mortgaging, exchanging, or otherwise disposing of the whole or any part of the prop-

erty and assets of every kind and description of such corporation, for property, or for the whole or part of the capital stock of any other corporation, whether domestic or foreign, or otherwise. Such meeting shall be held at the principal place of business of such corporation, and at least thirty (30) days previous notice of the time and place of such meeting shall be given to each person who appears as a stockholder upon the books of the corporation and is entitled to vote at such meeting, as aforesaid. The secretary of the corporation shall make out and deposit in the United States Post Office, postage paid, a notice of such meeting, directed to each stockholder of record of the corporation, entitled to vote at such meeting, * * * by his name and his place of residence appearing on said records. * * The notice shall state the time, place, and the purpose of the meeting, and shall contain a complete and specific statement of the proposal to be considered and acted upon at said meeting. * * * A similar notice shall also be published at least once a week for at least four (4) consecutive weeks preceding the day of said meeting, in some newspaper of general circulation published in the county wherein the principal place of business of such corporation is located. * * * Upon the day appointed for said meeting, if stockholders representing at least two-thirds (2/3) of the whole number of shares of the capital stock of the corporation then outstanding, and of record on the books of the corporation, and entitled to vote at such meeting, * * * appear in person or by agents or proxies filed with the secretary, the stockholders shall organize by electing one (1) of their number chairman, and some suitable person secretary. Thereupon any proposition for the sale, lease, mortgaging, exchanging, or other disposition of the whole or any part of the property and assets of every kind and description of such corporation, for property, or for the whole or part of the capital stock of any other corporation, whether domestic or foreign, or otherwise, may be considered and acted upon by said meeting, and if stockholders representing at least two-thirds (2/3) of the whole number of shares of the capital stock of said corporation then outstanding, and of record on the books of the corporation, and entitled, * * * to vote at such meeting, appearing at said meeting in person or by agents or proxies, as above provided, vote in favor of any such proposition, whether proposed by the directors or trustees, or not, as said stockholders may see fit, which proposition shall be in the form of a resolution specifying the particulars thereof and entered on the minutes of said stockholders' meeting, the said proposition or resolution shall be taken and adopted as the act of the corporation, and shall be carried out as such, and shall be approved and adopted by the board of directors or trustees. * * * And thereupon, and upon the adoption and approval by the board of directors or trustees of the corporation of such proposition or resolution, the corporation and its officers shall have full power and authority to do all acts and to execute all conveyances or other instruments in writing which are necessary or proper to carry out the said proposition or resolution, and the sale, lease, mortgage, exchange, or other conveyance of the whole or any part of the property of said corporation, authorized by said proposition or resolution, shall thereupon take effect and have the same force as if all the stockholders of the corporation had consented thereto."

It clearly appears from a reading of this statute that, so far as it is material here, the Legislative Assembly of the state of Montana intended thereby: (1) To do away with the common-law rule that neither the directors nor the stockholders of a Montana corporation have power to sell or otherwise transfer all of the property of a going, prosperous corporation, able to achieve the objects of its creation, as against the dissent of a single stockholder; (2) to empower the holders of two-thirds of the capital stock of such a corporation to authorize or compel the directors thereof to sell, lease, mortgage, exchange, or otherwise dispose of the whole of the property or assets of such a corporation for property or for the whole or part of the capital stock of another corporation; (3) that the power so given to the holders of two-thirds of the capital stock of the corporation company could be exercised only at a meeting of the stockholders of the corporation held at the principal place of business of such corporation, pursuant to call, by resolution, of the board of directors, at which holders of stock representing at least two-thirds of the whole number of shares of the capital stock of the corporation then outstanding and of record on the books of the corporation and entitled to vote were present; and (4) that such stockholders are without power to act at such meeting so called as aforesaid unless at least thirty days previous notice of the meeting shall have been given to each person who appears as a stockholder upon the books of the cor-

poration and is entitled to vote at such meeting by depositing in the United States Post Office, directed to each stockholder of record of the corporation entitled to vote at such meeting, by name and place of residence appearing in the corporation records, postage paid, and publishing at least once a week for at least four consecutive weeks preceding the day of said meeting, in some newspaper of general circulation published in the county wherein the principal place of business of such corporation is located, a notice stating the time, place, and purpose of the meeting and containing a complete and specific statement of the proposal to be considered and acted upon at such meeting.

■ The answer to the question as to whether or not the officers and stockholders of the defendant corporation had or had not the power to do the things they are said to have done, or the power to do the things they are said to contemplate doing, depends upon whether or not they have met the requirements of this statute. Forrester v. Boston & M. Mining Company, 21 Mont. 544, 55 P. 229, 353.

Plaintiff contends that it appears from the facts stated in the bill of complaint herein that the requirements of this statute have not been met, that the stockholders of the defendant corporation acted without authority, and that the corporation itself is without right to transfer the property it proposes to transfer.

This contention is based upon two theories: First, that the notice of the stockholders' meeting is insufficient in law; and, second, that the proposition submitted and acted upon at the stockholders' meeting is so vague and uncertain that it cannot form a legal base on which a contract can rest. Both of these contentions are well grounded.

■ The statute requires that "notice shall state the time, place and the purpose of the meeting" (of stockholders); "and shall contain a complete and specific statement of the proposal to be considered and acted upon at said meeting." Section 6004, Rev. Codes Mont.1921, as amended, Sess.Laws 1931, pp. 103, 107, c. 42, § 1. In the notice under consideration herein it is stated that a meeting of the stockholders of the defendant corporation will be held at a specified time and place "for the purpose of considering a proposition to sell, assign, transfer and set over unto the Bear Gulch Mining Company, a Montana corporation hereinafter to be formed, all the right, title and interest of said company" (the Inspiration Gold Mining Company) "in and to that certain mining lease and option dated June 10, 1932, made and entered into" by certain named parties; "and which said mining lease and option was on the 18th day of July, 1932, assigned * * * to the Inspiration Gold Mining Company and under and by virtue of which said assignment the Inspiration Gold Mining Company entered upon and holds possession of said mining property"; and that "the consideration for said transfer is the immediate taking over of said property by the Bear Gulch Mining Company, the Bear Gulch Mining Company agreeing to provide a fund of sufficient cash, as a working fund, for the further development of said property, to comply with all of the terms and conditions of said lease and bond aforesaid, and to preserve the same intact for the said Inspiration Gold Mining Company for a period of five years from the date of said transfer and assignment to the Bear Gulch Mining Company, unless terminated by a breach of the terms or conditions of the assignment thereof or by the mutual agreement of the parties hereto, the Bear Gulch Mining Company agreeing at the end of said term to re-assign and re-convey to the Inspiration Gold Mining Company the said mining lease and option of June 10, 1932, unless further extension is granted said Bear Gulch Mining Company by the directors of the said Inspiration Gold Mining Company, and other valuable consideration."

On reading this notice one naturally inquires: (1) How can a corporation yet unorganized supply that portion of the consideration which "is the immediate taking over of said property by the Bear Gulch Mining Company"? (2) What is "a fund of sufficient cash, as a working fund, for the further development of said property" which the non-existent corporation agrees "to provide"; (3) What "further development of said property" is contemplated? and (4) of What does the "other valuable consideration" proposed to be paid by the nebulous entity to which the defendant corporation's property is to be transferred consist?

No answer to any of these inquiries can be found in the notice here under consideration. It follows that the notice does not "contain a complete and specific statement of the proposal to be considered and acted upon at the meeting"; with the result that the same does not meet the requirements of the Montana statute and is insufficient in law to set the power of the stockholders

of the defendant corporation in motion. Jones v. Vance Shoe Company (C.C.A.7th Cir.) 115 F. 707, 708; Forrester v. Boston & M. Mining Company, 21 Mont. 544, 55 P. 229, 353; Thompson on Corporations (3d Ed.) pp. 106 and 284.

Furthermore, the proposal made and acted upon at the meeting of the stockholders of the defendant corporation is so vague and indefinite that it cannot be known therefrom what the defendant corporation or its directors are authorized to contract for.

A contract is a written agreement to do or not to do a certain thing. Section 7467, Rev.Codes Mont.1921. Among other things, it is essential to the existence of a contract that there should be parties capable of contracting and their consent. Section 7468, Id. The consent of the parties to a contract must be free, mutual, and communicated by each to the other (section 7473, Id.); and consent is not mutual unless the parties all agree upon the same thing in the same sense (section 7488, Rev.Codes Mont.1921).

 It is elementary that to constitute a contract the minds of the parties must have met upon the same thing at the same time; or, stated differently, a contract results from an offer by one party in form which may be accepted, and its unqualified acceptance by the other. Polich v. Severson, 68 Mont. 225, 216 P. 785; J. Neils Lumber Co. v. Farmers' Lumber Co., 88 Mont. 392, 397, 293 P. 288. The law is also too well settled to admit a doubt that, in order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And, if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the court nor the jury can make an agreement for the parties. Such a contract can neither be enforced in equity nor sued upon at law, section 7501, Rev.Codes Mont.1921; Price v. Stipek, 39 Mont. 426, 431, 104 P. 195; Schwab v. McVey, 54 Mont. 422, 425, 171 P. 277; Thrasher v. Schreiber, 77 Mont. 221, 227, 250 P. 600; Evankovich v. Howard Pierce, Inc., 91 Mont. 344, 351, 8 P.(2d) 653; and, in order to form a contract, there must be an offer by one party and an unconditional acceptance of it by the other in accordance with its terms. And, if the acceptance falls within or goes beyond the offer or makes a condition at variance with the proposal, there is no contract, and the transaction amounts to one of proposals and counter proposals only. J. Neils Lumber Company v. Farmers' Lumber Company, 88 Mont. 392, 397, 293 P. 288, and cases there cited.

 It is evident that the terms of the contract to be entered into are fixed and limited by the proposition considered and acted upon at the meeting of the stockholders of the defendant corporation, for the statute requires that the proposition for the sale, lease, mortgage, exchange, or other disposition of the property of the corporation "shall be in the form of a resolution specifying the particulars thereof"; and that when, and only when, stockholders representing at least two-thirds of the whole number of shares of the capital stock of said corporation then outstanding and of record on the books of the corporation vote in favor of "such proposition," the same shall be taken and adopted as the act of the corporation, and shall be carried out as such, and shall be approved and adopted by the board of directors; and further that "upon the adoption and approval by the board of directors * * * of the corporation of such proposition * * * the corporation and its officers shall have full power and authority to do all acts and to execute all conveyances or other instruments in writing which are necessary or proper to carry out the said proposition, * * * and the sale, lease, mortgage, exchange, or other conveyance of the * * * property of said corporation, authorized by said proposition * * * shall thereupon take effect and have the same force as if all the stockholders of the corporation had consented thereto." Section 6004, Rev.Codes Mont. 1921, as amended by Sess.Laws 1931, pp. 103–107, c. 42, § 1.

When the proposition considered and acted upon by the stockholders of the defendant corporation at the meeting referred to in the bill of complaint herein is measured by these rules, it is at once apparent that it is too vague and indefinite to form a legal base on which a contract can rest, for no one can determine with any degree of certainty from an inspection of the offer authorized to be made how much the nonexistent but proposed corporation would be called upon to provide, in cash, for the further development of the properties here involved; what further development of said property this nonexistent but proposed legal entity would be called upon to do; or of what the other valuable considerations that it must pay consist.

It follows that defendant's motion to dismiss the bill of complaint herein should be, and it is hereby, denied. Defendant is granted ten days after receiving written notice of this ruling within which to plead further herein if so advised.