### NATIONAL REFINING CO. et al. v. WAGNER et al.

### No. 3607.

Circuit Court of Appeals, Tenth Circuit.
July 14, 1948.
Rehearing Denied Aug. 16, 1948.

44

Eugene O. Monnet, of Tulsa, Okl., (Jack N. Hays, of Tulsa, Okl., on the brief), for appellants.

Mark H. Adams, of Wichita, Kan. (Charles E. Jones, of Wichita, Kan., William I. Robinson, of Tulsa, Okl., and J. Ashford Manka, of Witchita, Kan., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The National Refining Company[1] and the White Eagle Oil Company[2] brought this action against L. G. Wagner, Anna F. Wagner, and Marguerite Hyde Humphrys to quiet the title to an oil and gas lease.

On July 7, 1937, Jessie A. Hyde and the Wagners executed and delivered to the Refining Company an oil and gas lease on three sections of land in Finney County, Kansas. The lease provided that if no well should be commenced on the land on or before August 15, 1938, the lease should terminate, unless the lessee on or before that date should pay or tender to the lessors, or to the lessors' credit in the Kearney County Bank at Lakin, Kansas, or its successors, which should continue as the depository regardless of the changes in ownership of the land, $1,920 which should operate as rental and cover the privilege of deferring the commencement of a well for 12 months from such date, and that in like manner and upon like payments or tenders, the commencement of a well might be deferred "for like periods or the same number of months successively." On December 30, 1943, L. G. Wagner became the owner of the leased lands, subject to such oil and gas lease.

On or about September 15, 1944, an undivided one-half interest in the lease was assigned to Helmerich & Payne, Inc., which in turn immediately assigned such undivided one-half interest to the Oil Company. The Refining Company paid the delay rentals for the years 1938 to 1944, inclusive.

L. G. Wagner interposed a counterclaim seeking a decree adjudging that the lease had terminated and that the title be quieted in him as against the Refining Company and the Oil Company. From a decree as prayed for in the counterclaim, the Refining Company and the Oil Company have appealed.

The trial court found, in effect, that the rental check, for the period from August 15, 1945, to August 15, 1946, was not

---

[1] Hereinafter called the Refining Company.

[2] Hereinafter called the Oil Company.

mailed in time to reach the bank in due course of mail by August 15, 1945. The sole issue is whether that finding was supported by substantial evidence.

The check was numbered R-1064 and was dated August 11, 1945. A description of the leased lands and the following notation appeared on the bottom of the check:

"For the credit of Jessie A. Hyde, a widow; L. G. Wagner and Anna F. Wagner being payment of annual rental from August 25, 1945, to August 25, 1946, due under lease dated July 7th, 1937 * * *."

The rental check was taken from a pad of checks. Check No. 1063 was dated August 18, 1945, and other preceding and lower-numbered checks bore dates subsequent to August 11, 1945. Check No. 1065 was dated August 20, 1945.

The envelop containing the check was postmarked at Tulsa, Oklahoma, August 18, 1945, 1:30 P.M. It was received by the bank on August 20, 1945.

Rose Simpson, an employee of the Oil Company, testified that she prepared the check on August 11, 1945; that after it was signed, she, on the same day, enclosed it in an envelop and deposited the envelop in the United States Post Office mail chute on the fourth floor of the Philtower Building, in Tulsa, Oklahoma. She further testified that the mailing of the check was delayed until August 11, because the Oil Company was endeavoring to secure a permit to drill a well and had hoped to start the well before the rental payment date.

H. H. Griffin, the Auditor for the Oil Company, testified that he first saw the check on the morning of August 11, about 11:45 A.M.; that after it was signed, he took it to Rose Simpson's desk; that she put it in an envelop and placed the envelop in the mail chute.

The Refining Company and the Oil Company filed a motion for a new trial in which they set up that the mail chute in the Philtower Building had been clogged 58 times since June 1, 1939, 32 of which were below the fourth floor, where Rose Simpson testified she deposited the envelop containing the check. It is significant, however, that the mail chute was not clogged, according to the records presented in the motion, between August 10 and September 18, 1945. The trial court denied the motion.

The credibility of the witnesses and the weight to be given their testimony were peculiarly questions for the trial court. The trial judge had the opportunity, which this court does not have, of observing the witnesses while testifying and their demeanor on the witness stand, and was in a better position to judge their credibility than is this court.[3]

The fact, inferable from the notation on the check, that the employees of the Oil Company were mistaken as to the due date of the rental payment; that the envelop was postmarked August 18, 1945; that there was no showing that the mail chute was clogged between August 11 and August 18; and that the Oil Company was purposely delaying the mailing of the check because it hoped to commence the drilling of a well before the rental due date, and the dates of preceding and subsequent checks, justified the trial court, we think, in finding that the check was deposited in the mail chute on Saturday, August 18, rather than on Saturday, August 11.

Hence, we conclude that the finding of the trial court was not clearly erroneous and is, therefore, binding on this court.[4]

Affirmed.

[3] National Mut. Casualty Co. v. Eisenhower, 10 Cir., 116 F.2d 891, 895; British American Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256, 260; Larsen v. Portland, California, S. S. Co., 9 Cir., 66 F.2d 326, 329; 5 C.J.S. Appeal and Error, § 1645, page 575.

[4] North American Accident Ins. Co. v. Allentharp, 10 Cir., 164 F.2d 9, 11; McElroy v. Pegg, 10 Cir., 167 F.2d 668, 670.