**GILROY v. WHITE EAGLE OIL CO. et al.**

**ALBERTON CORP. v. WHITE EAGLE OIL CO. et al.**

Nos. 4494 and 4495.

United States Court of Appeals Tenth Circuit.

Dec. 30, 1952.

F. A. Bodovitz, Tulsa, Okl., for appellants.

Jack N. Hays, Tulsa, Okl. (Eugene O. Monnet, Tulsa, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN and MURRAH, United States Circuit Judges.

HUXMAN, Circuit Judge.

The appeals in these two cases present identical questions and will be considered together. These actions involved oil and gas leases to three sections of land in Finney County, Kansas, which may be referred to as the Wagner Tract. About August 8, 1944, the National Refining Company [1] and Helmerich & Payne, Inc.,[2] entered into a contract which created an oil and gas mining partnership. In this contract Helmerich and Payne assigned an undivided ½ interest in oil and gas leases covering some 13,040 acres to the National Refining Company and the National Refining Company in turn assigned an undivided ½ interest in some 21,860 acres of similar leases to Helmerich and Payne. All this acreage was located in the Hugoton Gas Field of Western Kansas. The Wagner Tract was a part of the acreage owned by National and was included in this transaction. The contract contained the usual provisions found in such contracts with respect to the duties and liabilities of the parties. With

1. William Whitman Company mentioned in the opinion is successor in name and interest to the National Refining Company.

2. According to the trial court's finding, White Eagle Oil Company is either the successor to Helmerich & Payne, Inc., or its alter-ego.

exceptions not material to the issues, it provided that all costs and expenses including delay rentals should be shared equally and that the operation and development of the property should be under the supervision and management of Helmerich and Payne, in accordance with the provisions of the accounting procedure attached. The contract contained no specific provision relating to whose duty it was to pay delay rentals necessary to keep the leases in force. The accounting procedure contained a statement providing that the operator should charge the joint account with delay or other rentals "when such rentals are paid by Operator for the joint account." Whether Helmerich and Payne was charged with the responsibility of seeing that all delay rentals were paid on time is not clear but it seems to be conceded that it did assume such duty with respect to the Wagner lease because it mailed a check dated August 11, 1945, to the depository bank for the payment of the delay rental due thereon August 15 of that year. The envelope containing this check was postmarked August 18 and was not received at the depository bank until after the due date for the payment of the delay rentals. The lessor refused acceptance and notified the lessee that the lease was forfeited for failure to make timely payment of the delay rental.

Helmerich and Payne, contending that the letter containing the check had been deposited in the post office on the 11th or 13th day of August in time to reach the depository bank before the due date, instituted a quiet title action in the federal court to quiet its title to the lease. The trial court judicially determined that the delay rental had not been paid until after August 15 and cancelled the lease. On appeal this court affirmed on July 14, 1948.[3]

After the quiet title action had been instituted, William Whitman Company on January 8, 1946, assigned an undivided ⅗₆ interest in all the leases in the joint venture to Wallace Gilroy and a like interest to Helene D. Gilroy, his wife. These assignments were accepted with actual notice of

the status of the Wagner lease and of the pendency of the litigation to quiet the title thereto. In fact, the assignment specifically provided that it was made subject to the result of the pending litigation. On the 29th day of March, 1946, Whitman also assigned all its right, title and interest in certain oil and gas leases including the Wagner lease to Alberton Corporation. This assignment contained this provision:

"No covenants or warranties, express or implied, on the part of the Assignor are included or intended to be included in this assignment."

After the termination of the quiet title action, the owners of new leases to the Wagner Tract developed the property and brought in three producing gas wells thereon. In January, 1950, White Eagle Oil Company purchased from these owners a number of gas producing properties including the Wagner Tract.

In this action appellants sought damages for negligently permitting the Wagner leases to lapse or specific performance of an alleged contract in which it is alleged White Eagle Oil Company agreed to substitute comparable acreage or in the alternative to have a constructive trust impressed upon the re-acquired Wagner leases. Appellants take the position that by their assignments they became members of the mining partnership with respect to the Wagner leases; that Helmerich and Payne stood in a fiduciary relationship to them and that it violated this relationship by failing to make timely payment of the delay rental. For the purpose of considering this contention, it may be conceded that Helmerich and Payne was charged with the timely payment of delay rentals; that it stood in a fiduciary relationship to the members of the mining partnership and that its failure to pay these rentals subjected it to liability to them. But appellants at no time owned a joint interest or any interest in the Wagner leases with the other members of the partnership. They took their assignments with actual notice of all the facts. They knew that the lessor contended that the lease had expired. At that time

3. National Refining Co. v. Wagner, 10 Cir., 169 F.2d 43.

the quiet title action had been filed. In fact their assignments were notice that they took nothing unless the litigation terminated successfully because it specifically provided in the case of the Gilroys that the assignor did not warrant the title as to "any and all liens and encumbrances of any kind or character which may result from pending litigation involving the aforesaid lease" and the assignment to Alberton Corporation provided that "No covenants or warranties, express or implied, on the part of the Assignor are included or intended to be included in this assignment."

The arrangement between Helmerich and Payne and National Refining Company created a mining partnership. To create such a relationship and be a member thereof there must be joint interest in the property by the parties sought to be held as partners; there must be an agreement to share in profits and losses and there must be conduct showing cooperation in the project. All these elements must be present. The absence of any one will be fatal to such a relationship.[4] Since appellants never acquired any interest in the Wagner leases, they did not become a member of the partnership with respect to that property. Not having been a member of the mining partnership with respect to this property and not having acquired any interest therein, no cause of action accrued to them because of anything Helmerich and Payne did or failed to do with respect thereto.

■ We do not overlook appellants' contention that appellees were guilty of fraud or bad faith in their representation with respect to the status of the Wagner lease and the payment of the delayed rentals thereon. This contention is effectively disposed of by the trial court's finding, amply supported by the record, that there was no evidence of bad faith or culpable negligence or misrepresentation of the facts with respect to the mailing of the Wagner rentals.

■ It is also contended that the right to an extension or a renewal of the Wagner lease belonged to the mining partnership and that the re-acquired Wagner lease should be impressed with a constructive trust in appellants' favor to the extent of ½ interest therein. It is sufficient to say that the reassigned Wagner lease was not, could not, and did not purport to be either a renewal or an extension of the original lease. The original Wagner lease came to an end upon the failure to make prompt payment of the delayed rentals. Appellees sought to obtain an extension or a renewal thereof but were unable to agree upon terms with the landowner. When these negotiations failed, the landowner leased the premises to other parties, total strangers to appellants. At the time they acquired the new leases the premises were undeveloped. Under the terms of this new lease they developed the premises and brought in gas production. More than four years later appellees purchased all the gas producing acreage including the Wagner lease, from the then owners thereof. Re-acquiring the Wagner property under these conditions and terms more than four years after the expiration of the original lease did not constitute an extension or renewal thereof and in no way violated any duty appellees owed appellants. None of the cases relied upon by appellants remotely involve facts similar to these.

■ During the pendency of the quiet title proceedings, many meetings and discussions were had between appellants and appellees. Some of these discussions related to the treatment which should be accorded appellants in the event the quiet title action should go against appellees. Discussions were had with respect to substituted acreage for the Wagner acreage. February 18, 1946, the White Eagle Oil Company wrote Wallace Gilroy and Helene D. Gilroy the letter set out in Footnote [5], in which as set out they agreed to assign

4. Robb v. Chapman, 185 Okl. 605, 96 P.2d 1033; Defenbaugh v. Purcell, 191 Okl. 192, 127 P.2d 207; Conley Drilling Co. v. Rogers, 191 Okl. 667, 132 P.2d 959; See also Thornton Oil and Gas, Volume 2, 1948, Pocket Parts, § 658.

5. "Dear Sirs and Madam: While we do not acknowledge any legal obligations, but do desire to be fair in the premises, we are writing you relative to the above lease.

"Payment of lease rental on the above

to them oil and gas leases in the proven area of the Hugoton Gas Field. Appellees took the position that this letter constituted a new contract and in an alternative cause of action sought specific performance thereof or damages for its breach.

The trial court's conclusion that the letter did not constitute an enforceable contract can be sustained on a number of grounds. The letter was dated February 18, 1946, and required acceptance thereof on the ...... day of March, 1946. Appellants did not accept the letter within the time specified therein. In fact, they did not undertake to accept it until two and one-half years later. During the time for acceptance the letter constituted merely an offer and an offer lapses by expiration of the time fixed for acceptance.[6] Appellants seek to justify the delay in acceptance on the ground that the parties continued negotiations during this time and that such negotiations constituted a continuation of the offer. But the testimony of appellant Gilroy makes it clear that the offer in the letter was not satisfactory and that the letter as written was not accepted and that there was no intention to accept it. Furthermore the letter was too vague and indefinite to constitute an enforceable contract. To be enforceable a contract must be definite and certain as to its terms and requirements. One must be able by referring to the contract to

identify the subject matter and also the essential commitments and agreements with respect thereto.[7] All the letter stated was that William Whitman Company, Inc., agreed "to assign * * * oil and gas leases in the proven area of the Hugoton gas field * * * whereby they will have and own a full 240 acre interest therein * * *." No standard is laid down as to what constitutes proven area and what is more important no index is given as to the acreage which is to be assigned. The vagueness of the letter with respect to the areage to be assigned is indicated by the fact that when William Whitman Company tendered acreage to appellants it was rejected as not in compliance with the spirit of the letter. Having failed to express their intent with respect to this matter with sufficient clarity to enable the court to identify the subject matter, the court may not do what the parties should have done, make specific the terms of the contract

Appellants urge other grounds in opposition to the judgment and appellees likewise make other contentions in its support. Many of these contentions are treated in the opinion of the trial court. We have given them consideration but since in our opinion what has been said effectively disposes of the appeal, we do not treat these additional matters in detail.

jointly owned lease (½ Helmerich & Payne, Inc., and ½ National Refining Company) was made through our office, by depositing rental check in the United States mail depository in the Philtower Building on Saturday afternoon, August 11, 1945, which was ample time for such rental to reach the depository Bank before due date, August 15, 1945. For some reason unknown to us the rental did not reach said Bank until after said due date; lessors refused to accept same, and litigation is now pending regarding acceptance of this rental by land owner.

"In event we should not prevail in this lawsuit, but lose the lease on the above three sections, 1920 acres, we agree to assign to William Whitman Company, Inc., formerly named National Refining Company, oil and gas leases in the proven area of the Hugoton gas field, either full or part interest, whereby they will have and own a full 240 acre interest therein; and to Wallace Gilroy and

Helene D. Gilroy, assignees of National Refining Company, like leases giving to them a full 720 acre interest.

"The delivery to you of such assignments shall constitute restitution and/or compensation in full for any loss you may have sustained by reason of the loss of your respective interest in the said Wagner lease, now in litigation.

"This letter is in triplicate, each copy of which shall be executed by all parties and deemed an original.

Very truly yours,

"The foregoing letter is accepted this ............ day of March, A.D. 1946."

6. Restatement of Contracts, Section 40 (1).

7. Sticelber v. Iglehart, 169 Okl. 453, 37 P.2d 638; American Mining Co. v. Himrod-Kimball Mines Co., 124 Colo. 186, 235 P.2d 804; Schwartz v. Inspiration Gold Mining Co., D.C., 15 F.Supp. 1030; 12 Am.Jur. Page 554.

The judgments appealed from in Number 4494—Wallace Gilroy v. White Eagle Oil Company, a corporation; and Helmerich & Payne, Inc., a corporation, and Number 4495—Alberton Corporation, a corporation, v. White Eagle Oil Company, a corporation, and Helmerich & Payne, Inc., a corporation, are severally affirmed.